SPEARBRACKER, Respondent, vs. THE TOWN OF LARRABEE, Appellant.

*November 7 — December 1, 1885.*

HIGHWAYS AND BRIDGES: TOWNS: VILLAGES: NEGLIGENCE. *(1) Notice of injury: Alteration of date: Service: Evidence. (2) Notice of defects in bridge: Evidence. (3) When town liable for defects in bridge in village. (4) Voluntary repairs by village. (5) Presentation of claim. (6) Contributory negligence: Knowledge of defect.*

1. When a written notice under sec. 1339, R. S., was offered in evidence, the date January 11, 1884, appeared to have been erased and the date December 11, 1883, substituted. The plaintiff testified that he thought the alteration was made before the notice was served, and the evidence tended to show that such service was made December 11, 1883. *Held,* that the notice and the explanatory evidence were properly admitted. The time of service, not the date of the notice, was the material thing.

2. Evidence that a bridge was out of repair, and the planks old and decayed at other points than the one where an accident occurred, is admissible to show such a general defective condition of the bridge as would charge the town authorities with notice of its condition.

3. The town is liable for the damage happening by reason of the insufficiency or want of repair of a bridge in a village within its limits, unless such bridge is regulated by the provisions of a special village charter or is situated upon a street laid out in such village and not upon a town, county, or state road.

4. The fact that a village has occasionally made slight repairs upon a bridge which the town is bound to maintain, will not affect the liability of the town for an injury resulting from the defects or lack of repair thereof.

5. Subd. 2, sec. 821, R. S., as amended by ch. 113, Laws of 1882, refers only to accounts, and not to claims for damages arising *ex delicto.*

6. From the fact that the plaintiff knew of a defect in a bridge before driving thereon, it does not necessarily follow that he was negligent.

APPEAL from the Circuit Court for *Waupaca* County. The case is sufficiently stated in the opinion. There was

a verdict and judgment for the plaintiff for $100 damages. The defendant appealed.

For the appellant there was a brief by *Gary, Phillips & Forward,* and oral argument by *Mr. Forward.*

For the respondent there was a brief by *F. M. Guernsey,* attorney, and *Gregory & Gregory,* of counsel, and oral argument by *Mr. J. C. Gregory.*

ORTON, J.   This action was brought by the respondent to recover damages for injury to a horse, occasioned by the insufficiency and want of repair of a bridge upon one of the highways of the defendant town, and he recovered judgment therein, from which this appeal is taken.   The facts in evidence will sufficiently appear in the consideration of the exceptions argued by the learned counsel of the appellant.

1. The admission in evidence of the written notice to the town required to be given by sec. 1339, R. S., ninety days after the happening of the event which caused the damage, as a condition precedent to maintaining the action.   There were two such notices offered in evidence: one for the purpose of such notice as above required, and the other as the statement of the plaintiff's claim, filed with the town clerk, to be laid before the town board of audit, as required by sec. 824, R. S.   These notices were alike, except it is claimed the first of said notices bore date January 11, 1884, and the other December 11, 1883.   When offered, the date of the first notice, January 11, 1884, was erased, and the date December 11, 1883, was written.   It was not conclusively proved that such alteration was made before its service on one of the supervisors of the town, but the plaintiff, as a witness, testified that he *thought* it was, and the testimony was sufficiently positive that the notice was served at the last-mentioned date.   The date of the notice is quite immaterial, but it was necessary to prove the time when it

was served. The accident occurred September 19, 1883, and January 11, 1884, would have been too late. The jury were warranted from the evidence in finding that the service was made in time, and most clearly the notices themselves, together with the explanatory evidence, were admissible to be considered by the jury, and their rejection by the court would have been erroneous.

2. The court refused to strike out the testimony that the bridge had many holes in it at other places than where the horse stepped through and was injured, and that the bridge was generally out of repair and the planks rotten and decayed, a few days before the accident. The refusal was based upon the ground that such condition of the bridge was pertinent to the question of notice to the town authorities of the defect which caused the injury. We think the testimony was proper with that view, because if the authorities had done their duty in repairing other places of defect of which they might be presumed, from their number and character, to have had notice, they would have probably discovered the defect in question. This defect was not such as to be dangerous except because the planks of the bridge were rotten and decayed underneath at the cracks or spaces where they came together. The space between the planks at this point, at the top or surface, was not wide enough to admit a horse's foot and leg, but by reason of the decay on their under side, when the horse's foot pressed upon the edges of the planks at this spot, they broke through and made a hole large enough for it to go through. This appeared to be the general defective condition of the bridge. The planks were laid lengthwise, and these cracks were the weak and defective places in consequence of such decay. This is what we understand from the evidence. It was generally a very bad and defective bridge and unsafe, and its condition was such that we think the town authorities should be held to have had notice of it, and of all such de-

fective places, including the one in question.  To the same effect was the evidence that an omnibus had broken through a similar place a short time before.

3. The circuit court refused to grant a nonsuit on the motion of the defendant based, *first*, upon the statutory liability of the village of Clintonville, in which said bridge is situated, or of the county of Waupaca, to keep the same in repair.  This bridge was built by the defendant town, on a highway known as the New London and Shawano road, after the village was incorporated under the general law out of a portion of said town.  There was no evidence that this highway had ever been adopted as a county road, so as to make the county liable to keep it, or the bridges thereon, in repair, or for damages occasioned by its not being kept in repair.  Sec. 1339, R. S.; *Stilling v. Thorp*, 54 Wis. 528. The law controlling and fixing the liability to keep this bridge in repair is contained in sec. 910, R. S.  This section is in the chapter entitled " Of Villages," which provides for their creation and incorporation " out of a part of any town," and first provides that the town shall not be liable to keep the streets and highways in such village in repair, etc., and then provides that "all bridges in such village shall be built, maintained, and repaired by the town in which the same is situated."  This language would seem to be sufficiently explicit.  But the learned counsel of the appellant contends that sec. 1339, R. S., which provides that " if any damage shall happen to any person, his horses," etc., " by reason of the insufficiency or want of repairs of any bridge," etc., " in any town, city, or *village*, the person sustaining any such damage shall have a right to sue for and recover the same against any such town, city, or *village*," conflicts with the above section, and, being subsequent in the revision, repeals that part relating to bridges in villages.  It seem to us, however, that the village mentioned in this section is such as is incorporated by special charter, in

which its streets, and bridges on the same, are regulated by special provisions, and not a village carved out " of any town or towns," and organized under the general law, in which and through which town and county highways had already been laid out, and on which bridges have been or ought to be constructed for the use of such highways.  With this reasonable construction there is no conflict.  This construction is approved and virtually enacted in sec. 2, ch. 178, Laws of 1883, which provides that " every such incorporated village or city shall have full power to control the building and repairing of all bridges in such village or city, *excepting upon town, county, and state roads*, and the expenses thereof," etc.  It will be readily seen that this provision was necessary, not as an amendment, but to provide for building and repairing a class of bridges not before provided for, namely, bridges necessary to be built on streets laid out in such villages, and not on town, county, or state roads.  This chapter is made specially to apply to " villages or cities *not existing under special charters*."  It will be seen that neither of the above sections of the Revised Statutes provides for this class of bridges by the construction we have given to sec. 1339, and the exception in this new provision re-enacts and limits the above provision in sec. 910.  " Town, county, and state roads," in the law of 1883, must mean such as were laid out before the villages were incorporated; for there is no right in towns or counties to lay out such roads through villages after their incorporation and becoming separate municipalities and having control of their own streets.  *Jones v. Kolb*, 56 Wis. 263.  The defendant town, probably under such a construction of the statute, built this bridge after the village was incorporated, and by the same legal duty it should have kept the same in repair, and is liable for damages occasioned by its want of repair.  What the village did in making occasionally some slight repairs

on the bridge was voluntary, and of course could not affect such legal duty and liability.

The *second* ground of the motion for a nonsuit, that the proper verified claim of the plaintiff was not filed with the clerk and board of audit according to ch. 113, Laws of 1882, was untenable, because this statute does not enlarge the class of claims embraced in sec. 821, R. S., and that section only refers to *accounts*, and not to a claim for damages arising *ex delicto*. *Jaquish v. Ithaca*, 36 Wis. 108.

*Third*. The plaintiff had knowledge of the defect before he drove on that part of the bridge. If he had such knowledge, still it was a question for the jury, whether he was negligent. *Cuthbert v. Appleton*, 24 Wis. 383; *Wheeler v. Westport*, 30 Wis. 392. But the extent of this particular hole or crack the plaintiff did not know, for its width on the surface was not large enough for a horse's foot to go through until it had been enlarged by its weight breaking through the decayed plank.

As to the instructions of the court to the jury: (1) The instruction that it was *undisputed* that the bridge was a part of the highway, and had been used as such *without any action of the village to adopt it* as a street, etc., was immaterial, whether correct or not, because the law fixes the liability of the town for this bridge on a town road, and there had been no municipal action on the part of the town or village to make this road into a street, so as to vacate it as a town road. The street superintendent of the village may have repaired some few places of defect a short time before the accident, but that, as we have said, was voluntary, and could not transfer the liability to keep the bridge in repair from the town to the village. (2) This instruction stated the law of the town's liability as we now hold, and was correct. (3) The instruction that the town was guilty of negligence was most clearly correct from the

evidence. This bridge was and had been for a long time notoriously out of repair and dangerously defective, and if examined, as it should have been by the town authorities, this particular defect, and the decayed condition of the under side of the plank, would have been observed.

The instructions were very full, fair, and correct, and we think there was ample evidence to warrant the jury in finding for the plaintiff. The only possible apology for the town for such negligence in not keeping this bridge in repair is in the fact of there being some question as to whether it was the duty of the town or village to do so.

*By the Court.*— The judgment of the circuit court is affirmed.