Koenig, Administrator, Appellant, vs. The Town of Arcadia, Respondent.

*October 19 — November 5, 1889.*

*Death caused by defect in bridge: Liability of town: Instructions to jury.*

1. In an action to recover damages for the death of a person, alleged to have been caused by a defect in a bridge, it was error to instruct the jury that " the accident may, in a sense, have been the fault, or produced by the fault, of the town officers, and yet the town may not be responsible for it."

2. It was error, also, to charge that " this accident may have been produced by a defect in the bridge, and yet the town not be responsible, because it is not every defect in a highway which renders a town liable."

Koenig vs. The Town of Arcadia.

3. It was error, also, to charge that the duty of the town to keep its highways in a reasonably safe condition "does not require it to make its bridges absolutely safe, because that cannot be done practically. They cannot be made so safe but what accidents may happen upon them."

4. It was error, also, to. instruct the jury that they must find whether the bridge was safe or not, and that in considering the case they should lay out of their minds the fact that an accident happened upon it, and look at the bridge just as the evidence showed it to be before the accident, and say whether that was a reasonably safe and sufficient bridge.

APPEAL from the Circuit Court for *Trempealeau* County. The facts are stated in the opinion. The plaintiff appeals from a judgment in favor of the defendant.

*E. Q. Nye,* for the appellant.

For the respondent there was a brief by *Losey & Woodward* and *S. Richmond,* and oral argument by *G. M. Woodward.*

ORTON, J. This is an action, under the statute, to recover damages for the killing of Henry P. Koenig, deceased, by the neglect and default of the officers of the town, and by the insufficiency and want of repairs of a certain bridge therein. The main facts may be briefly stated, substantially as follows:

The bridge in question was over the Trempealeau river, between East and West Arcadia, in the town of Arcadia, about 134 feet long, ten or eleven feet wide, of single track, and covered by two layers of three-inch plank,— the lower crosswise, and the upper lengthwise; and near the north end there was a hole or rut in the wagon track, about three feet long, three and one half inches wide, and three inches deep, worn down to the lower layer of plank, through which a wagon wheel could pass, after dropping down into it with a sudden jar. Henry P. Koenig, the deceased, on the 23d day of August, 1887, was driving across said bridge

a two-horse wagon loaded with cane, sitting on the forward end of the load, and when one of the wheels fell into the rut or hole the load was suddenly pitched forward, and the team started and ran away, and went off one of the approaches to the bridge, and the deceased fell under the wagon and was killed. This hole had existed long enough to raise the presumption that the officers of the town knew of it, if it was an insufficiency or want of repair of the bridge. There was some testimony tending to show that the deceased was chargeable with a want of ordinary care in loading the cane, in driving his team, and in sitting on the end of the load, and in some other matters; but the main point in controversy, and on which the most testimony was introduced, was as to whether this hole or rut was such a defect or insufficiency or want of repair as would make the town liable. The jury rendered a verdict for the defendant.

There are several errors in admitting and rejecting testimony assigned, but they do not appear to be very material. The most important exceptions are to the instructions of the court to the jury on the law of the case. We think that several instructions were materially erroneous and misled the jury, and they were as follows: "So this accident may, in a sense, have been *the fault*, or produced *by the fault*, of the town officers, and yet the town may not be responsible for it." "So this accident may have been produced by a *defect* in the bridge, and yet the town not be responsible, because it is not *every defect* in a highway which renders a town liable for damages." After instructing the jury that it was the duty of the town "to keep its highways in a reasonably safe condition," the court said further: "This duty does not require it to make its bridges *absolutely safe*, because that cannot be done practically. They cannot be made *so safe* but what accidents may happen upon them." In these novel and peculiar instructions, the three very im-

portant words, *fault*, *defect*, and *safety*, which have as clear and definite a meaning in the law as in common usage, and the very test words of liability in such a case as this, are rendered worse than meaningless. The jury are told that the officers may be in fault, and yet the town is not liable; that the accident may have been caused by a defect in the bridge, and the town not responsible; and that bridges need not be made absolutely safe, or so safe that accidents will not happen upon them. The jury are left to speculate upon how great should be the fault, or the defect, or the want of safety, to make the town liable, when the words have no degrees of comparison in such a case.

These instructions are so clearly objectionable that no argument or authorities are necessary. These words are always used in like cases to import liability, as shown by all the reported cases and the elementary principles relating to municipal liability for defective streets and bridges. If these words are not used in their full and unrestricted meaning, how great should be the fault or the defect, or how much unsafe the bridge? The jury were not informed, and, from the very nature of the case, could not be. It is sufficient that the officers of the town were in fault or guilty of neglect of duty in not repairing the defective condition of the bridge or in allowing it to remain so long a time, and that the defect or insufficiency or want of repair of the bridge was the cause of the accident or injury, and that the bridge, in this respect, was unsafe; and that is the end of the subject in law as well as in logic. The theory that the injury might have been a mere accident or misfortune is based upon the fact that there was no adequate cause of it by any defect in the bridge. *Chappel v. Oregon*, 36 Wis. 145. But if there was a defect, and such a defect that the officers of the town were in fault for not repairing it, and such defect was the proximate cause of the injury, and such defect rendered the bridge unsafe in that particu-

lar, and the officers of the town had knowledge of it, then the liability follows as a legal conclusion. An instruction that a certain condition of a bridge was not *such a defect* as would render the town liable was refused by the court, and the refusal approved by this court, in *Stilling v. Thorp*, 54 Wis. 528. The question was not whether the authorities of the city were satisfied that the street was made reasonably safe and the defect cured, but whether there was a defective condition of the street as claimed, and, if there was, then the street was unsafe as a matter of law, and the city was liable. *Prideaux v. Mineral Point*, 43 Wis. 513. See, also, *Burns v. Elba*, 32 Wis. 605; *Draper v. Ironton*, 42 Wis. 696; *Matthews v. Baraboo*, 39 Wis. 674; *Cartright v. Belmont*, 58 Wis. 370; *Prindle v. Fletcher*, 39 Vt. 255; *Horton v. Ipswich*, 12 Cush. 488; *Johnson v. Haverhill*, 35 N. H. 74; *Winship v. Enfield*, 42 N. H. 197. Under such a charge of the law, the generous inclination of the jury would most likely be to find that the town was *not much* in fault, and that the defect was not *very great*, and was not *very unsafe*. It may be that they did so find in this case. At all events we think the instructions were very material, and good ground for a reversal of the judgment.

Another instruction of the court to the jury we think was materially erroneous, as follows: After instructing the jury that they must find whether the bridge *was safe* or not (which, by the way, was not the question), the court said: "And in considering this case you ought to lay out of your minds the fact that an accident happened upon it, and decide that question just as you would have decided it if you had been called, with this same evidence of the condition of the bridge, to decide it before an accident had happened at all; . . . so you will look at the bridge just as the evidence shows it to you before the accident happened, and say whether that was a reasonably safe and

sufficient bridge." This instruction, besides the fault of excluding from the consideration of the jury the *res gestæ* of the case, takes away the most important test of the unsafe condition of the bridge,— by its practical illustration. It would have been improper to have shown that a similar accident had happened by this hole or rut before this time; and yet such evidence ought not to be excluded, if the jury must only consider the condition of the bridge before the accident. There can be no proof so conclusive that the hole was a dangerous defect as that it actually did cause injury. It would exclude the most important evidence of the character of the defect, not to consider the consequences of it in the case which constituted the *res gestæ*. This instruction is not sought to be sustained by the learned counsel of the respondent by any adjudicated cases. The question has not been directly decided by this court, for there was never any occasion for it; but the general doctrine, in such cases, always includes all the facts of the particular case. The question is whether the defect constituted an insufficiency or want of repairs, "under all the circumstances attending the particular case." *Wheeler v. Westport*, 30 Wis. 392. The case of *Spearbracker v. Larrabee*, 64 Wis. 573, illustrates the propriety and the necessity of considering the accident itself in determining the defect. The crack in the plank at the upper surface was not wide enough to let a horse's foot through, but they were rotten and decayed underneath; and when the horse of the plaintiff stepped on it, then they broke away, and let his foot through. This defect could not have been understood without the accident. There may be many cases in which the defect may be illustrated only by the accident, as in a case now in this court, where the defect consisted in the joints of the frame-work of the bridge being rotten or decayed, and known only by its breaking in that case, and the question is whether its condition ought not to have

been known by the officers of the town from the age of the bridge.[1] It is said in *Hill v. Fond du Lac*, 56 Wis. 242: "It is obvious that every such case must be determined from all the facts and circumstances constituting the *res gestœ*." "The defect may not be inferred merely from the accident; and yet the jury may take the accident into consideration, with all the other facts in the case, to determine it." *Church v. Cherryfield*, 33 Me. 460. This court said in *Oliver v. La Valle*, 36 Wis. 592: "Had the bridge been in repair, it is safe to assume the accident would not have happened." In many cases negligence can be inferred only from the happening of the accident. *Cummings v. National Furnace Co.* 60 Wis. 603, and cases cited. But the principle involved in this instruction is so clearly unreasonable that no further general authorities are necessary. It violates one of the fundamental principles in actions of tort,— that the act itself must be separated from the conditions of liability, and that the *res gestœ* may, be broken up, and only a part of it considered at a time, in relation to any distinct fact material to the issue. This instruction was also material, and we think that a new trial ought to have been granted on the motion of the plaintiff.

*By the Court.*— The judgment is reversed, and the cause remanded for a new trial.

---

[1] See *Spaulding v. Sherman, post,* p. 77.— REP.