PROPSOM, Respondent, vs. LEATHAM and another, Appellants.

*November 20 — December 15, 1891.*

*Master and servant: Negligence: Injury to servant: Dangerous premises: Evidence: Damages.*

1. The plaintiff having been injured while at work for the defendants on their dock carrying shingles to a boat, and the evidence tending to show that the injury was caused by a defect in the dock, it was proper to instruct the jury as to the duty of the defendants to provide a reasonably safe place for the plaintiff to work in.

2. Evidence was admissible that the dock was defective in many places by reason of holes other than the one which caused the injury to the plaintiff.

3. Evidence as to how the dock compared with others used for the same purposes was not admissible.

4. Evidence that the plaintiff was an habitually careless man was not admissible.

5. The complaint alleged that the defect which caused the injury was a hole about ten inches broad and eighteen inches long, which was covered by a loose board or slab.   The jury found that at the place where the plaintiff's leg went through the dock there was a broken or cracked plank filling the space, which gave way when plaintiff stepped on it.   *Held,* that the variance, if any, was not material.

6. Both bones of plaintiff's right leg were broken near the ankle. At the time of the trial, more than two years afterwards, he still suffered pain and was unable to walk without a cane. He testified that his leg was crooked near the ankle, which was sore and was swollen every day; that his right leg was two inches shorter than the other; and that he was unable to do a day's work or earn his former wages. But one medical witness was called, who testified, on the part of the defense, that he examined the leg about a week after the injury and again ten days later; that there was then no shortening of the leg and nothing to indicate any permanent disability if the leg were properly cared for; that on an examination at the time of the trial he found the leg had shortened half an inch and that there was a soreness in the foot, the cause of which he could not explain. *Held*, that from this evidence the jury might find that the injury was of a permanent character, and that the court therefore properly gave instructions as to the damages for such an injury.

7. The defendants claimed that some negligence of the plaintiff had caused a change in the leg from what it was soon after the accident, but there was little evidence to sustain such claim. The court charged that if this were so the defendants were in no way responsible for damages resulting from such negligence. *Held*, that the question was fairly submitted to the jury.

8. A verdict for $1,800 is *held* not excessive.

APPEAL from the Circuit Court for *Door* County.

Action to recover damages for personal injuries sustained by the plaintiff while in the employ of the defendants on July 5, 1888, and alleged to have been caused by the defendants' negligence in permitting their dock upon which the plaintiff was at work to become and remain out of repair and in an unsafe condition. The principal facts will sufficiently appear from the opinion. The testimony of the witness Wead there referred to was to the effect that in the summer of 1888, prior to the accident, there were a good many holes in the dock where the shingles were commonly piled, and that the planks were pretty well worn; that there were at least fifteen or twenty holes, some of them large enough to take a man's foot in, some smaller,

and some larger; and that the holes were weather-beaten and showed signs of being old holes.

The jury returned a special verdict to the effect that the plaintiff was injured, July 5, 1888, by stepping through a hole or defective place in the defendants' dock; that the defendants did not know of such hole or defect before the plaintiff was injured, but that it had existed for such length of time before the accident that, in the exercise of ordinary care and reasonable diligence, they could have discovered and repaired it; that it had existed two weeks or more; that it was in the dock when the shingles which were removed from the spot July 5, 1888, were piled there; that at the place where the plaintiff's leg went through the dock there was, at the time, a broken or cracked plank filling the space, but which gave way when the plaintiff stepped on it; and that the plaintiff could not, by the exercise of ordinary care on July 5, 1888, have avoided the injury. The jury also assessed the plaintiff's damages at $1,800.

From the judgment entered upon the verdict in favor of the plaintiff the defendants appealed.

*G. W. Allen*, attorney, and *Wm. H. Timlin*, of counsel, for the appellants, contended, *inter alia*, that the testimony did not show any permanent injury resulting from the accident, and the matter of damages for such injury should not have been submitted to the jury. The future effect of an injury is a matter for expert testimony. *McClain v. Brooklyn City R. Co.* 116 N. Y. 467; *Filer v. N. Y. C. R. Co.* 49 id. 42, 46. The future consequence must be reasonably certain, and must inevitably and necessarily result from the original injury. *White v. Milwaukee City R. Co.* 61 Wis. 536, 541; *Stutz v. C. & N. W. R. Co.* 73 id. 147, 157; *Curtis v. R. & S. R. Co.* 18 N. Y. 534, 542; *Strohm v. N. Y., L. E. & W. R. Co.* 96 id. 305.

For the respondent there was a brief by *Greene & Vro-*

*man*, of counsel (*O. E. & Y. V. Dreutzer*, attorneys), and oral argument by *Y. V. Dreutzer* and *C. E. Vroman*.

COLE, C. J.   As this was an action for damages for a personal injury received by the plaintiff while at work for the defendants on their dock, it is very obvious it was most proper for the trial court to instruct the jury as to the duty of the defendants to provide a reasonably safe place for the plaintiff to work, as well as his duty to exercise due care to avoid an injury.   The charge of the court upon these points is quite full, and seems to us unobjectionable. It is certainly not justly open to the criticism made upon it by defendants' counsel, as being misleading.   This general remark is all we deem it necessary to say upon several objections taken to the charge on that subject.

It is said the court erred in admitting evidence of other defects in the dock than the one which caused the accident. The witness Olinger, who was working on the dock at the time the plaintiff was injured, was asked to state what the condition of the dock was,— as to whether sound or defective in any way,— and to describe its condition at the time.   The question was objected to, but the objection was overruled, and the witness stated, in substance, that he saw only one hole in the dock at the time; that he had seen some others in the spring of the year, and some a couple of months before, which had been repaired or fixed up before the plaintiff was injured; that he had seen such holes once in a while when he worked there.   The evidence was harmless as detailed by the witness, and there is other testimony of the same kind.   The testimony of the witness Wead was admissible, as this court has held it was proper to show that a bridge was out of repair by evidence that the planks were old and decayed at other points than the one where the accident occurred, because, if the authorities had done their duty in repairing other defective places, of

which from their character and number they might be presumed to have had notice, they would probably have discovered the particular defect in question. *Randall v. N. W. Tel. Co.* 54 Wis. 140; *Spearbracker v. Larrabee*, 64 Wis. 573; *Shaw v. Sun Prairie*, 74 Wis. 105; *Koenig v. Arcadia*, 75 Wis. 62; *Spaulding v. Sherman*, 75 Wis. 77. It was certainly notice to the defendants, if the dock was defective in many places by reason of holes, that they should cause the structure to be thoroughly examined frequently and all defects repaired, and they would fail in the performance of their duty if they did not do this after such a warning as to its condition.

The testimony as to how the dock in question compared with the ordinary docks used for shipping lumber and shingles was properly excluded, for the most obvious reasons. The inquiry was not whether the dock was as good as others which were used for a like purpose, but whether it was reasonably safe for the defendants' employees to work upon; and the learned circuit judge charged that there were certain duties which the law imposed upon the master towards his servant, which were that the master was bound to use ordinary care and due diligence to provide a reasonably safe place for his servant to work, and, further, was obliged to use such diligence and care in keeping such place in a reasonably safe condition, if it was liable to become unsafe by use. There can be no doubt but that the law held the defendants to this degree of liability, and hence it was not error to exclude the testimony offered.

The same remark may be made as to excluding the testimony that the plaintiff was an habitually careless man. The question was whether the plaintiff was guilty of negligence which contributed to his injury, and the jury found that he was not. The jury also found that there was a defective place in the dock which had existed for so long

before the accident that the defendants, in the exercise of ordinary care and diligence, could have discovered and repaired it, and that the plaintiff, by the exercise of ordinary care, could not have avoided the injury. That there was abundant evidence to sustain these findings cannot well be controverted.

It was alleged in the complaint that the dock was unsafe by reason of a hole about ten inches broad and eighteen inches long, which was covered by a loose board or slab placed over the same. There was considerable testimony that there was such a hole in the dock which was covered by a slab, though, as the counsel for the plaintiff says, the testimony on the point descriptive of the defect is conflicting. Some of the witnesses described it as an open hole; others as a hole with a slab over it, which broke when plaintiff stepped upon it; others that the end of the plank gave way; while others say that a short piece of plank at this point broke and caved in, and let the plaintiff through. The jury found, in effect, that, at the place where the plaintiff's leg went through the dock, there was a broken or cracked plank, which gave way. The variance between the allegations in the complaint and the finding is not material, if any there was, because it could not have misled the defendants as to the defect.

Exceptions are taken to the charge as to the rule of damages. The court instructed the jury that, if the plaintiff was entitled to recover, they should assess his damages resulting directly from the injury received by him at the time and place in question, and that there were two classes of damages — those which were supposed to represent actual compensation for the loss or injury, and those which were known as "punitive" damages. The court directed that there could be no assessment of any damages on the latter ground, but that the damages which were to be assessed were such as would compensate the plaintiff for the injury

he had sustained, and nothing more; and, in considering what they were, the jury were told that they were to consider nobody but the plaintiff himself,— his injury and his damage; not the defendants, their ability or inability to pay. The court further added that the jury must bear in mind in assessing the damages that they are only such as are the direct and natural consequences of the injury sustained at the time,— that is, the damage that resulted from the injury, and not from any other cause, if there are other causes, such as negligence or neglect of the plaintiff himself while he was suffering from the injury, which has enhanced his damages; that the defendants were not responsible for that, because that is not an item of injury or damages resulting from the act for which they are liable, but from the plaintiff's own act. The court further said, as to the items of actual compensation, the plaintiff was entitled in the first place to be paid the expenses he had been put to by way of medical attendance and surgery, if any, and that the next item was any amount that he had lost by way of earnings, wages, as it appeared that he was a laboring man, in consequence of his inability to work for any length of time; that another item was such wages as he had lost after he became able to work by reason of his impaired ability to work, if before this accident he was in a physical condition to enable him to earn more wages than he had since, though able to work, but not being able to earn as much wages, why his loss was the difference; and that he was entitled, in addition to these items, to be compensated for the physical and mental suffering that he had undergone in consequence of this injury; and, further, that "if the testimony shows that he has received an injury which is permanent, which will continue in the future, resulting in making him less able to earn wages than formerly, and resulting in his suffering pain and inconvenience, the jury are directed to assess the same class of damages for the future that I have

mentioned that it is proper for them to assess up to the present time, under these heads such amount as it is reasonably probable from all the circumstances of the case, the age and condition of the man, and everything that he would lose, or will compensate him for the future pain and suffering, if any is likely to result from the permanence of the injury."

We have given in substance the entire charge relating to the rule of damages. Now, it is objected that the court erred in this charge, in stating, as it did, that the jury might assess damages for a permanent injury, and for future pain and suffering and impaired capacity to earn wages in the future, because (1) there was no evidence given on the trial that the injury was permanent; (2) there was no evidence that there would be future pain and suffering resulting from the injury; (3) there was no evidence that the plaintiff's capacity to earn wages in the future would be diminished.

We disagree very widely with counsel as to what the testimony tends to show in regard to these facts. Of course, in order to warrant damages for a permanent injury, there should be evidence upon which such damages can be based. In *White v. Milwaukee City R. Co.* 61 Wis. 536, the rule on this subject is stated by Mr. Justice LYON as follows: "A mere possible continuance of disability by reason of an injury is not a proper element of damages. To justify the jury in assessing damages for future or permanent disability, it must appear by the proofs that continued or permanent disability is reasonably certain to result from the injury complained of."

In this case the plaintiff, while at work on the dock carrying shingles onto a boat, fell through a hole in the dock, and broke his right leg near the ankle. The leg was broken by a bunch of shingles falling from his shoulder on it, both bones being broken. More than two years had elapsed between the injury and the time of trial, and the plaintiff

still suffered pain in his ankle and foot, and he was unable to walk without a cane. He testified that his leg was crooked at the ankle; that the ankle was sore, and was swollen every day; that his right leg was two inches shorter than the other. He is unable to lift and carry shingles, because he cannot lift while standing on his leg, but has to go down on his knees in order to lift a heavy weight. He is unable to do a day's work or earn his former wages. This is the substance of his testimony as to the nature and extent of his disability. There was but one medical witness sworn on the trial, and he on the part of the defense. The surgeon who regularly attended the plaintiff and reduced the fracture was absent from the state, and therefore could not be examined, but Dr. Hendricks, who was called by Dr. Cook, who had charge of the case about the time the first dressing was removed and the permanent dressing put on the limb, about a week after the plaintiff was hurt, testified that he then examined the leg to see if the bones were in place, and that the condition of the leg was then promising and doing well, the bones having been properly adjusted. This witness saw the plaintiff next about ten days after, when he made a further examination. He says there was no shortening of the leg, nor any deformity, except what would take place in throwing out the provisional callus that made the bone. He said that there was nothing, therefore, in the nature of the fracture to indicate any permanent disability, if the leg had been properly cared for at that time. He and Cook made careful measurements at both his visits, and there was no difference between the two limbs at all. He thought at the end of five weeks from the date of the injury his leg "would be as good as ever,— would be perfectly sound." It is evident that the witness did not consider a broken leg near the ankle a very serious injury. I venture to say, if his leg had ever been broken he would have modified his opinion on the subject. To say

that a broken leg, where both bones are fractured, would be as good as ever and perfectly sound in five weeks, may be the opinion of medical writers, but it is not confirmed by the experience of men who have sustained such an injury. The doctor made an examination of the plaintiff on the trial. He found that his leg was shortened half an inch, and that there was present a soreness in the foot, the cause of which he could not explain. He says there was a degree of tenderness in the ankle joint. He could not locate it. "It is in some of the bones of the *tarsus*, but whether in the joint itself is a matter of doubt."

We deem this a sufficient reference to the testimony to show that there was evidence from which the jury might find that the injury was of a permanent character, and that the plaintiff's ability to earn wages was diminished, and will continue so. It is reasonably certain that future pain and suffering will continue, and that permanent disability is inevitable, as a necessary result of the injury. Such being the state of the proofs, there was no error, within the doctrine of the *White Case*, in the charge to which exception is taken. We have examined the cases which are cited on the briefs of defendants' counsel, but find nothing in them in conflict with these views. They need not, therefore, be commented on here.

It is claimed by the defendants' counsel that the injured limb had changed in some way from what it was three weeks after the fracture, and it is argued that this must have been caused by some negligence or imprudence of the plaintiff. We find but little evidence in the case to sustain this theory. But the court charged the jury that if the plaintiff had been negligent in his conduct, and had not taken care of himself and of his broken limb, the defendants were in no degree responsible for damages which resulted from his own act. So the question whether the plaintiff's disability and suffering were wholly consequences

of the original injury or had been aggravated by other causes was fairly submitted on the evidence.

We cannot disturb the verdict on the ground that the damages awarded are excessive. The jury gave $1,800 damages, which we are unable to say is disproportionate to the injury sustained. *Stutz v. C. & N. W. R. Co.* 73 Wis. 147.

This disposes of all the material questions in the case, and it follows that the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.