CHICAGO & N. W. RY. CO. v. PRESCOTT.

(Circuit Court of Appeals, Eighth Circuit. December 4, 1893.)

No. 316.

1. RAILROAD COMPANIES — ACCIDENTS AT CROSSINGS — CONTRIBUTORY NEGLIGENCE.

It is a question for the jury whether it is contributory negligence for a person driving a gentle horse to follow other vehicles across a track behind a standing train, which obstructs all but about 14 feet of the crossing, when invited to do so by the company's flagman.

2. SAME—ASSUMPTION OF RISK.

The doctrine of voluntary assumption of risks does not apply to the case of one who exercises ordinary care in attempting to pass by the rear of a standing train, which wrongfully obstructs most of the street.

3. SAME—STREET CROSSINGS—RIGHT TO OBSTRUCT.

The mere grant of a license to lay a railroad track across a public street gives no authority to stand cars thereon, so as to obstruct the crossing, for such periods as may suit the company's convenience; and whether it had a right to do so, in any particular instance, is a question for the jury, if the circumstances are such that reasonable persons might entertain different views as to whether the blockade was justifiable.

4. NEGLIGENCE—PROXIMATE CAUSE—SHYING OF HORSE.

Where the shying of a horse brings a vehicle into collision with the rear end of a train which wrongfully obstructs most of the street crossing, such shying cannot be regarded as the sole, proximate cause, and the jury is justified in finding that the obstruction directly contributed to the accident.

In Error to the Circuit Court of the United States for the Northern District of Iowa.

At Law. Action by E. H. Prescott against the Chicago & Northwestern Railway Company to recover damages for personal injuries. Verdict and judgment for plaintiff. Defendant brings error. Affirmed.

N. M. Hubbard, N. M. Hubbard, Jr., and F. F. Dawley, for plaintiff in error.

Charles A. Clark and John C. Leonard, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

THAYER, District Judge. This is a writ of error to reverse a judgment which was recovered by the defendant in error in a suit brought by him against the Chicago & Northwestern Railway Company. The facts on which the recovery was predicated are not in dispute, and they are, substantially, as follows: The defendant company maintains and operates a double track railroad through the city of Cedar Rapids, Iowa, and for some distance within the limits of that city its tracks are laid in and along Fourth street, and across First avenue, at the point where Fourth street crosses that avenue. The passenger depot of the defendant company is located at the southwest corner of First avenue and Fourth street. On the morning of April 4, 1890, the plaintiff, with his two sons, was driving down First avenue, towards Fourth street, in a one-horse delivery wagon. As they approached the railroad crossing on Fourth street, they found the street partially blockaded by one of the defendant company's west-bound passenger trains, which had recently arrived from the east. First avenue, at that point, is about 80 feet wide, from curb to curb; but so much of the street was taken up by the standing passenger train that it only left a roadway about 14 feet in width between the rear end of the train and the east sidewalk, for the passage of vehicles. After the plaintiff reached the crossing, he halted on the north side of the train for a few moments, whereupon the defendant company's flagman, who was standing on the track at the rear end of the train, said: "Hurry up. Come on. You are all right." The gates across First avenue were at the time elevated, and several vehicles that were going in the same direction as the plaintiff had already crossed the tracks in safety. The engine of the passenger train was detached therefrom, and had moved to an adjoining track to take up a mail car which was to be coupled to the train; and a switch engine was standing on the same track as the passenger train, at the rear end thereof, and about 40 or 50 feet distant from the rear car. Under these circumstances, the plaintiff attempted to cross the tracks by the narrow roadway at the rear end of the train. While making such attempt, his horse, for some reason, suddenly shied to the right, bringing the wagon in contact with the buffers of the rear car. By reason of the sudden shock, plaintiff was thrown

from his seat to the ground, and sustained serious injuries, for which a jury awarded him damages in the sum of $1,500.

It is contended by the defendant company that as the plaintiff had an unobstructed view of the entire situation at the time he attempted to cross the tracks, and as the situation was not altered before the accident happened by any act of the defendant company, he should be held to have voluntarily assumed whatever risk was incurred in making the crossing, and should also be adjudged guilty of contributory negligence. These propositions were submitted to the trial court in the form of instructions, and its refusal to so charge constitutes one of the errors complained of. In view of all of the circumstances to which we have adverted, we find ourselves unable to hold, as a matter of law, that the plaintiff was guilty of contributory negligence. The passageway at the rear end of the train was wide enough to permit a team to be driven through, with ordinary safety. Other vehicles had passed through before the plaintiff attempted to cross the tracks. The plaintiff testified that the horse which he was driving was an old and gentle horse, that had been driven about the city for seven or eight years by himself for the purpose of delivering groceries, and was not in the habit of jumping or shying when in proximity to cars or engines. Moreover, the plaintiff was invited by the defendant's flagman to make the crossing, which was an assurance that the train would not be immediately moved, and that the crossing could be made in safety. Under these circumstances, it was clearly the duty of the trial court to submit the question of contributory negligence to the determination of the jury. In other words, on the state of facts disclosed by the record, the plaintiff's attempt to cross the tracks on the occasion in question cannot be said to have been attended by such obvious dangers to life or limb that all reasonable men would declare him to have been guilty of culpable negligence. Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679; Hoye v. Railway Co., 62 Wis. 672, 23 N. W. 14; Railway Co. v. Killips, 88 Pa. St. 405; Railway Co. v. Hutchinson, 120 Ill. 587, 11 N. E. 855; Directors, etc., v. Wanless, L. R. 7 H. L. 12; Wheelock v. Railway Co., 105 Mass. 203; Eddy v. Powell, 1 C. C. A. 451, 49 Fed. 814.

With reference to the further contention of counsel,—that the plaintiff voluntarily assumed the risk of crossing the tracks, and should be precluded from recovering on that ground,—it seems sufficient to say that the rule invoked has no application to the present case. As the jury found that the plaintiff exercised ordinary care and circumspection in attempting to drive around the rear end of the train, the railway company is not released from liability for an injury occasioned by a negligent obstruction of the street, which rendered plaintiff's act necessary, merely because the plaintiff had full knowledge of the situation when he undertook to make the crossing. The doctrine of "voluntary assumption of a risk," as distinguished from contributory negligence, is generally applied in cases arising between employer and employe, where an employe, without any valid excuse for so doing, voluntarily undertakes to work with a tool or an appliance which is known to be

defective, and by so doing assumes the risk of getting hurt, and thereby releases his employer from liability. It is no doubt true, as a general proposition, that a person is not entitled to claim compensation for an injury which he has sustained by voluntarily encountering a known danger, which there was no occasion to encounter, and that might as well have been avoided. But this general proposition must be accepted with the qualification that where one negligently places an obstruction in a public street, which occasions an injury to a traveler upon the highway, he will not be absolved from liability to the injured party merely by showing that the latter had knowledge of the obstruction before the injury was sustained. In all such cases, to relieve the wrongdoer from liability for the injury, it must be made to appear that the injured party failed to exercise ordinary care in attempting to pass by the obstruction at all, or in the manner in which the attempt was made. The streets and sidewalks of large towns and cities are frequently obstructed to some extent, and it is not an uncommon occurrence to find defects therein. People who reside in such places often have occasion to travel over defective streets, and to drive around temporary obstructions that are found in the public thoroughfares; and they cannot be expected to refrain altogether from using a street which they find it convenient or necessary to use, because it is not as safe as it might be, or wholly free from obstructions. In a given case the circumstances may be such as to justify a man in attempting to drive over a defective street, or past an obstruction therein, though in so doing he incurs some risk. It cannot be held, therefore, as a matter of law, that a person who travels over a defective street, with knowledge of the defects therein, or who drives by an obvious obstruction in a public thoroughfare, thereby assumes the risk of injury, and is precluded from recovering against one who is responsible for the defect, or who has negligently caused the obstruction. The better view is that a person is not deprived of the right to recover damages, in such cases, unless it is made to appear that, in view of all the circumstances, he failed to exercise that degree of care which persons under similar circumstances ordinarily exercise, and was therefore guilty of contributory negligence. Bridge Co. v. Bevard; (Pa. Sup.) 11 Atl. 575; Kendall v. City of Albia, (Iowa,) 34 N. W. 833; Millcreek Tp. v. Perry, (Pa. Sup.) 12 Atl. 149; Dewire v. Bailey, 131 Mass. 169; City Council of Montgomery v. Wright, 72 Ala. 411; Railway Co. v. Gasscamp, 69 Tex. 545, 7 S. W. 227; Spearbracker v. Town of Larrabee, 64 Wis. 573, 578, 25 N. W. 555; Kelly v. Railroad Co., (Sup.) 9 N. Y. Supp. 90; Beach, Contrib. Neg. § 37. From what has been said, it follows that no error was committed by the circuit court in refusing the several instructions to which we have heretofore referred.

It is next insisted that the trial court erred in refusing to charge, as it was requested to do, that there was no evidence that the railway company "unnecessarily blocked the crossing, nor for an unreasonable or unlawful length of time." In support of this contention, it is claimed that the court should have declared, as a matter of law, that under the circumstances disclosed by the testimony

the railway company had an undoubted right to obstruct travel on First avenue for the length of time that it appears to have occupied the crossing on the morning of the accident, and that there was no evidence tending to show that the company was guilty of any fault or neglect. It is not claimed, however, and the record does not disclose, that there was any local law or ordinance of the city of Cedar Rapids, then in force, which permitted the company to halt its trains on First avenue, or to occupy the crossing for any greater length of time than would ordinarily be consumed in moving a train of cars across the street. The contention on the part of the railway company that it had the right to stop its trains on the crossing, and to temporarily obstruct travel, seems to be founded altogether on the fact that it had been authorized to lay its tracks for the movement of its trains in and along Fourth street and across First avenue. But as the streets of a city are primarily designed for the use of persons who have occasion to pass over them, either on foot or with vehicles, it cannot be inferred that a license to lay a railway track across a street in a large city or town carries with it the right to use the crossing for the purpose of standing trains of cars thereon for such period as happens to suit the convenience of the railway company, or to use the highway as a depot yard. We would not be understood as holding that a railway company cannot, under any circumstances, lawfully halt a train across a public thoroughfare, over which it has been permitted to lay its tracks, so as to obstruct travel thereon. A case might be supposed where it would, no doubt, be justified in so doing. But when a railway company assumes to stop a train across a public street in a large town or city, without express authority for so doing, it must be prepared to show, as against one who has sustained a special injury by the obstruction of the street,—especially if it is a street that is heavily burdened with traffic,—that there was some overweening necessity which rendered the blockade justifiable. And, according to well-established rules, the issue as to whether a street was rightfully obstructed, should be submitted to the jury, if the circumstances attending the blockade are such that reasonable persons might entertain different views as to whether the action of the company was justifiable. Gahagan v. Railway Co., 1 Allen, 190. In the case at bar the evidence tended to show that First avenue, where it is crossed by the defendant company's tracks, was more heavily burdened with traffic than any other street in the city of Cedar Rapids. The blockade occurred in the daytime, during business hours, and may have lasted six or seven minutes, and possibly longer. The engine of the passenger train had stopped in front of the depot, a short distance east of a switch, so that it might move through the switch to an adjoining track, and pick up a mail car. This left the rear end of the train on the crossing, which it effectually blockaded for some 60 or 70 feet. In view of these facts, we are not prepared to say that all reasonable persons would necessarily conclude that the railway company was without fault; that it exercised its right of transit across the street in a reasonable manner, and with due regard for the rights of the public. It seems to have been

using the highway, when the accident occurred, as a depot yard,—to stand its cars, and to make up its train,—and it can hardly be contended that, under a license to lay its tracks across the street, it could lawfully devote the highway to such uses. Nor was it a valid excuse for the obstruction of the street that the depot had been located at the corner of Fourth street and First avenue, and that trains coming from the east, when halted at the station, would necessarily project to some extent into the avenue. It was the defendant's duty to so locate its depot that trains could be halted thereat without obstructing travel on the public thoroughfares, and it cannot plead the faulty location of its depot or switches as a justification for incommoding the public. State v. Morris & E. R. Co., 25 N. J. Law, 441; State v. Chicago, M. & St. P. Ry. Co., 77 Iowa, 443, 42 N. W. 365; Jones v. Railway Co., 107 Mass. 264. We are therefore constrained to hold that the issue concerning the negligence of the railway company was properly submitted to the jury, and that no error was committed in refusing the instructions to which we have last above referred.

With respect to the suggestion that the injuries complained of were immediately occasioned by the sudden shying of the horse which the plaintiff was driving, it is only necessary to say that the shying of the horse cannot be regarded as the sole, proximate cause of the injury. The obstruction which had been placed in the highway directly contributed to the accident, and the jury was justified in so finding. Andrews v. Railway Co., 77 Iowa, 672, 42 N. W. 513; Skjeggerud v. Railway Co., 38 Minn. 56, 35 N. W. 572; Corey v. Railroad Co., 32 Minn. 457, 21 N. W. 479.

The result is that the judgment of the circuit court must be affirmed, with costs; and it is so ordered.