HALLUM, Respondent, vs. VILLAGE OF OMRO, Appellant.

*May 14—June 10, 1904.*

*Municipal corporations: Defective sidewalks: Personal injuries: Notice of defect: Evidence: Waiver of objection to improper answers: Medical experts: Permanency of injury: Special verdict: Proximate cause: Damages: Instructions to jury.*

1. In an action against a village for injuries alleged to have been sustained by a person tripping upon a loose plank in a sidewalk in which stringers, planking and nails were all rotten and defective, evidence as to the general defective condition of the walk, extending over some three years before the accident and some time thereafter, was admissible upon the question of notice to the village authorities of the defect in question.

2. Where, in answer to proper questions, witnesses improperly stated their conclusions, failure to move that such answers be stricken out was a waiver of objection thereto.

3. A medical expert might properly give his opinion as to a person's ability to control normally the action of one of her legs, based on his observation of her as she walked, and also give his opinion as to the probable cause of such condition.

4. A question, put to a medical expert, whether an injury will *probably* be, or is *likely* or *liable* to be, permanent is not improper as being speculative or conjectural, though the question for the jury to determine is whether the injury is *reasonably certain* to be permanent.

5. In an action for injuries caused by negligence, the better practice is to include, in a special verdict, a question covering the subject of proximate cause; but the verdict may be sufficient without it, if the element of proximate causation appears as a matter of law from the evidence and the other facts found.

6. In an action for injuries alleged to have been caused by a defective sidewalk, it is essential to a recovery that the defect which caused the injury should have existed for a sufficient length of time to enable the proper officers, by the exercise of ordinary care, both to discover and to remedy it. Questions in a special verdict on this subject, and instructions relating thereto, *held* defective and misleading.

7. In an action for personal injuries the jury were charged that in assessing damages up to the time of the trial only physical and mental pain and suffering caused to plaintiff by the in-

juries could be considered; and in close connection therewith they were told that if they found the injuries were reasonably certain to be permanent they might take that into consideration in fixing the damages. *Held*, that the jury must have understood that the recovery for future loss could extend only to the same elements as past loss, and that the charge was not erroneous, though its language might have been made plainer.

8. The jury should have been told, however, not that they *might*, but that they were *bound to*, take into consideration the future pain and suffering which they should find the plaintiff was reasonably certain to suffer as the result of her injuries.

9. A special verdict should be made up of direct questions sufficient to cover, singly, all material issues of fact raised by the pleadings and controverted on the evidence, each question admitting of an affirmative or negative answer.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

Action upon a claim for personal injuries. The facts alleged in the complaint are these: April 29, 1900, plaintiff, while traveling upon the public sidewalk on the north side of Mill street in the defendant village, about one hundred feet west of High street and in front of lot 16 north of Fox River, belonging to the Kundy estate, was tripped up by a loose plank forming a part of such walk, severely injuring her. The walk at the place of the injury was insufficient in that the planking was laid on two stringers and projected over the same on each side, and the stringers, plank, and nails were decayed so that a person stepping on one end of a plank was quite likely to cause it to tip up at the other end and obstruct the passage of one walking on that side of the walk. For several hundred feet on either side of the *locus in quo* the walk was in the defective condition mentioned, and such condition and the defect causing the injury had existed for some two years before the accident to the knowledge of the officers of defendant whose duty it was to attend to such matters. The particulars of plaintiff's injuries were stated, and compensation was asked for to the extent of $2,750. Service of a no-

tice of the injury and compliance with sec. 1339, Stats. 1898, were alleged, the particulars of the injury and the time and place of the accident being stated as in the complaint.

Service of the notice and some formal allegations of the complaint were admitted by the answer, and issue was joined with all the allegations as to negligence on the defendant's part. The cause was submitted to the jury for a special verdict with the following result:

"(1) Was the plaintiff injured at the time alleged in the complaint? *Answer.* Yes.

"(2) Was the sidewalk at the place where the plaintiff claims to have been injured in an unsafe and defective condition and out of repair? *A.* Yes.

"(3) If you answer the foregoing question 'Yes,' was such defective condition of the sidewalk the cause of the plaintiff's injury? *A.* Yes.

"(4) Had such defects in the sidewalk, if any, existed for such a length of time that the village authorities in the exercise of ordinary care and prudence ought to have known thereof? *A.* Yes.

"(5) Was there any defect that caused the plank to tip? *A.* Yes.

"(6) If you answer the last question 'Yes,' then state what such defect was? *A.* The plank had become loose.

"(7) Did the plank become loose and tip by reason of Mrs. Bailey stepping on the end of the plank? *A.* The plank was loose and tipped by reason of Mrs. Bailey stepping on the end of the plank.

"(8) Did the defendant before the injury have notice of the defect in said sidewalk? *A.* Yes.

"(9) At what point on the north side of the sidewalk was the plank located which caused the accident to the plaintiff? *A.* On the sidewalk on the north side of Mill street, about 185 feet east of East street.

"(10) How far was the plank located west from High street? *A.* About 100 feet.

"(11) If the court should be of the opinion that the plaintiff is entitled to recover, at what sum do you assess her damages? *A.* $750."

Judgment was rendered upon the verdict in plaintiff's favor, questions being reserved for review by proper exceptions, which are discussed in the opinion. The defendant appealed.

For the appellant there were briefs by *Bouck & Hilton,* and oral argument by *J. M. Olin* and *J. F. Kluwin.*

For the respondent there was a brief by *Eaton & Weed* and *L. K. Eaton,* attorneys, and *F. J. Eaton,* of counsel, and oral argument by *L. K. Eaton.*

MARSHALL, J. The proof respecting where the accident occurred was conflicting. Counsel for appellant insist, it was conclusively shown that such place was more than one hundred feet west of the one designated in the notice. Upon that theory they strenuously urge that such notice was fatally defective. We shall not discuss the evidence in respect to the matter. It has been carefully examined, resulting in the conclusion that we cannot agree with counsel's contention that the verdict of the jury, in effect finding that the place of the accident was correctly stated in the notice, is wholly without support.

Evidence was permitted, against objection, that the condition of the walk was generally defective, such evidence extending over some three years before the accident and some time thereafter. It was competent on the question of notice to the village authorities of the defect in controversy, as has been repeatedly held in similar cases. *Weisenberg v. Appleton,* 26 Wis. 56; *Ripon v. Bittel,* 30 Wis. 614; *Sullivan v. Oshkosh,* 55 Wis. 508, 13 N. W. 468; *Spearbracker v. Larrabee,* 64 Wis. 573, 25 N. W. 555; *Shaw v. Sun Prairie,* 74 Wis. 105, 42 N. W. 271; *Propsom v. Leatham,* 80 Wis. 608, 50 N. W. 586; *Barrett v. Hammond,* 87 Wis. 658, 58 N. W. 1053; *Grimm v. Washburn,* 100 Wis. 229, 75 N. W. 984; *McHugh v. Minocqua,* 102 Wis. 291, 78 N. W. 478; *Conrad v. Ellington,* 104 Wis. 371, 80 N. W. 456; *Duncan v. Grand*

*Rapids,* 121 Wis. 626, 99 N. W. 317. Mere remoteness as to time, or whether the generally defective condition existed after as well as before the accident in controversy, where the nature of the particular defect is so connected with such condition that the latter would reasonably suggest the probability of the former, does not render such evidence incompetent. In *Grimm v. Washburn, supra,* evidence was permitted showing that the alleged defective bridge was old and in bad condition five years prior to the accident.

Complaint is made because witnesses were permitted to state their conclusions as to whether the general condition of the walk was good or bad. We are unable to find such permission was given. In answer to some proper questions witnesses improperly stated their conclusions, which would probably have been stricken from the record had appellant's counsel moved therefor. They failed to do so. The result is that the improper evidence was permitted by them, not by the court.

Dr. Harrigan testified, as an expert, he observed that respondent carried herself, as he thought, abnormally as she walked, and was permitted to give his opinion as to what such abnormal condition might be attributed to. Complaint is made of that upon the ground that the opinion of the doctor was based upon an oral examination of respondent. We cannot discover that such was the case from the record. The witness seems to have given an opinion as to respondent's ability to control, normally, the action of her left limb from having observed her as she walked, and given opinion evidence as to the probable cause of such condition. There was no error in that.

The doctor, having knowledge as to what respondent testified respecting her condition before and after the accident, was asked, upon the hypothesis that her testimony was true, whether the injuries she was suffering from "were liable to be permanent." It is strenuously insisted that such testi-

mony was conjectural and was erroneously received, under the doctrine of *Viellesse v. Green Bay,* 110 Wis. 160, 85 N. W. 665. True, there can be no recovery, legitimately, for permanent impairment in a case like this in the absence of competent evidence warranting a conclusion, with reasonable certainty, that such impairment will exist as a result of the accident; but it is not necessary that opinion evidence should be confined to that high degree of certainty. Experts may properly testify to the mere probabilities of the case. *Block v. Milwaukee St. R. Co.* 89 Wis. 371, 61 N. W. 1101; *Rhinehart v. Whitehead,* 64 Wis. 42, 24 N. W. 401; *Crites v. New Richmond,* 98 Wis. 55, 73 N. W. 322; *Matteson v. N. Y. C. R. Co.* 62 Barb. 364; *Peterson v. C., M. & St. P. R. Co.* 38 Minn. 511, 39 N. W. 485; *Griswold v. N. Y. C. & H. R. R. Co.* 115 N. Y. 61, 21 N. E. 726; *Filer v. N. Y. C. R. Co.* 49 N. Y. 42; *Lehigh & H. R. R. Co. v. Marchant,* 84 Fed. 870; *Brown v. Third Ave. R. Co.* 42 N. Y. Supp. 700. It would ordinarily be very difficult to secure any more definite opinion evidence than that from a conscientious expert. In *Rhinehart v. Whitehead, supra,* commenting on the ruling allowing a physician to state from his experience and observation the tendency or danger of a particular kind of wound, the court remarked: "He only testified to the general, probable consequences of such an injury, which was proper." In *Block v. Milwaukee St. R. Co., supra,* a physician was permitted to give his opinion of the "reasonable probabilities of the plaintiff's ultimate recovery from his injury." In respect thereto the court said:

"While it is true that the whole testimony must establish in the minds of the jury more than a mere 'reasonable probability' and must amount to proof to a 'reasonable certainty,' this ultimate fact is susceptible of proof by items of testimony which do not separately fully establish it. The phrase 'reasonable probability' is equivocal. It was for the jury to give force to the doctor's testimony in accordance with the intention of the words used, rather than with a strict or technical definition of the words."

The subject seems to have been treated as an original matter. The previous decision of this court on the subject was not referred to. It must be confessed that one might well infer that the evidence was held proper in part because "reasonable probability" is susceptible of being taken as "reasonable certainty," and that it might not have been held proper if such term had been regarded as having been used in its plain, ordinary sense. In that it would seem, in the light of what was said in *Rhinehart v. Whitehead,* and the general trend of authorities on the subject, the court was rather too cautious.

In *Crites v. New Richmond, supra,* a physician was permitted to testify at considerable length as to the probable consequences of a sprain of the ankle. He said: "The joint is liable to be, and will be, weak for quite a long time, probably two or three years, and will afterwards be more liable to injury than a healthy joint, and may trouble the plaintiff, especially in stormy weather." That was approved as not being speculative or conjectural.

In *Filer v. N. Y. C. R. Co., supra,* the doctor was asked "as to the probability, from his experience and medical knowledge, of a recurrence of inflammation of the injured muscle." He answered that he "could not say the probabilities were very strong; that he would feel, speaking from experience, that there was danger of a return of the inflammation." The evidence was held competent.

In *Peterson v. C., M. & St. P. R. Co., supra,* it was said, in effect, of opinion evidence in answer to the question, "What in your judgment is the probability of her recovery?" that the subject of inquiry was wholly a matter of probability; that all any honest witness could say was that recovery was either probable or improbable; that the distinction must be kept in mind between the reasonable certainty of permanent impairment as a fact, and the means of establishing it.

Much confidence is placed by the learned counsel for appellant in *Collins v. Janesville,* 99 Wis. 465, 75 N. W. 88,

and *Viellesse v. Green Bay,* 110 Wis. 160, 85 N. W. 665, as ruling in their favor the contention that evidence as to whether respondent's injury was liable to be permanent was improperly received. True, in the first case cited the admission of evidence as to whether an injury "was likely to be permanent" was condemned, and in the last case referred to it was said that evidence as to the probability, or likelihood, of an injury being permanent, is in some respects on the border line between mere conjecture and legitimate opinion evidence, and possibly on the side of the former, reference being made to *Block v. Milwaukee St. R. Co.* and *Collins v. Janesville.* Inasmuch as an opinion as to what was likely in the matter in question was condemned in the latter case, and what was reasonably probable was in the main, as we have heretofore indicated, held proper in the former, it is inferable that the evidence which was supposed might be classed as speculative was that regarding whether the injury was likely to be permanent. In that, it seems, on reflection, the fact that "likely" has reference to probability, not to possibility (Webster's Dict.), was not for the time appreciated. That led to doubt being cast upon whether an inquiry as to what is likely to be the case as to the permanency of an injury was proper. An examination of the cases cited will show that "probable," "likely" and "liable" have been treated as synonymous, each dealing with reasonable probability, not with possibility, and that what may probably or is likely or liable to be the future result of a personal injury is competent evidence to prove what is reasonably certain in the matter. That is according to lexical authority as to the meaning of the words. . The better way, we should say, to invoke professional opinion evidence in such a matter, is to ask for the expert's opinion, not using either term. But an interrogatory as to what the probabilities are, or what is likely or liable to be the result as regards permanency of the injury cannot be condemned as speculative or conjectural. This does not militate

at all against the doctrine that the ultimate vital fact to be determined is .what is reasonably certain to be the result. That is for the jury to determine from all the evidence bearing on the question, including the opinion evidence as to what is probable, likely, or liable to be the case.

The third ground assigned for a reversal is that the jury failed to pass upon the question of proximate cause, no interrogatory in respect thereto having been included in the special verdict either expressly or in connection with the charge. It has been often held that where the element of responsible causation appears as a matter of law from the evidence and other facts found, no specific finding on the subject is necessary. That would probably rule the assignment of error in question in favor of respondent if all the other facts essential to her right to recover were found by the jury or appeared beyond reasonable controversy from the evidence. Nevertheless, the practice of relying on such rule is unsafe. The better way is to include in the verdict in every case of this kind a question covering the subject of proximate cause, and to explain it so the jury may not needlessly fail to answer it intelligently. It is a vital matter in every such case. The existence of the fact in respect thereto in plaintiff's favor is as essential to his right to recover as that he was injured. A careful trial court, fully appreciating that, will rarely fail to take a finding covering the matter.

Error is further assigned because there was no finding that the defect which caused the injury had existed prior to the accident for a sufficient length of time to enable the officers of the appellant, by the exercise of ordinary care, to discover and remedy it. We can see no escape from counsel's contention in respect thereto. Both time, by the exercise of ordinary care on the part of the municipal officers, to discover the defect, and time to remedy it, were essential to actionable negligence, as has often been indicated, and is elementary. *Mauch v. Hartford,* 112 Wis. 40, 54, 87 N. W. 816. The

fourth question of the special verdict, to which this branch of the case refers, it will be seen by reference to the statement of facts, was fatally defective. It is claimed that the question was made doubly bad by an erroneous instruction which permitted the jury to answer it as they did without reference to the particular defect which caused the injury. The court said in respect to the question:

"This question requires you to determine whether these defects, if there were any, had existed for such length of time that the village in the exercise of ordinary care and prudence ought to have known it."

Probably the learned court intended by that to have the jury understand that they were to answer whether "these defects," referring to the general defective condition of the walk testified to, had existed for such a length of time that the village officers in the exercise of ordinary care ought to have known "it," the defect in question. It may be that the charge was understood differently by the jury. We are inclined to hold that it was fatally misleading.

It is claimed that the court did not confine the assessment of damages for disability which the jury might find plaintiff would be reasonably certain to suffer from permanently. We think otherwise, though the language of the charge might well have been made plainer. The jury were told that in assessing damages up to the time of the trial only physical and mental pain and suffering caused to respondent by the injuries she received could be considered. In close connection therewith they were told that, if they found plaintiff was reasonably certain to suffer impairment in the future by reason of the injury, they might take that into consideration in fixing the damages. It seems they must have understood by that that the recovery for future loss could extend only to the same elements as past loss. The court should have told the jury, not that they *might* take the future pain and suffering which they should find to a reasonable certainty plaintiff

would suffer consequent upon her injury into consideration in awarding damages, but that they were bound to do so, and to award her adequate compensation therefor.

Error is assigned as to that part of the special verdict covering the issue respecting whether appellant had such knowledge of the defect in the walk which caused the injury prior thereto as to render it liable for actionable negligence. This refers to the eighth question, whereby the jury were asked: "Did the defendant before the injury have notice of the defect in said sidewalk?" It is about as faulty as it could well be. It does not refer expressly to time in regard to the accident to respondent, and does not include the element of sufficient time before such accident to enable the village officers, by the exercise of ordinary diligence, to remedy the defect. The error in the fourth question was repeated in this one. Moreover, the latter in connection with the instruction given in respect thereto did not necessarily call for an answer as to knowledge of the defect which caused the injury. Obviously, no other was material as an ultimate fact. The jury were told: "The question is, Did the village have notice of any defect in the neighborhood of the accident, not off somewhere, but in the neighborhood where the accident happened?"

The special verdict seems to have been drafted in disregard of the repeated admonitions of this court as to what such a verdict should contain. Instead of its being made up of sufficient direct questions to cover, singly, all material issues of fact raised by the pleadings and controverted on the evidence, each question admitting of an answer in the affirmative or negative, some of such issues were entirely omitted, as we have seen, and several questions were included referring to mere evidentiary matters, several questions were included which were in the nature of mere cross-examination of the jury, and others were included which did not admit of an affirmative or negative answer. It is hoped that the mandate of the statute regarding how such a verdict should be framed,

as the same has been repeatedly construed by this court, will have earnest attention and will be reasonably, at least, observed.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.