Upon the trial of this action the court denied the motion of the defendant to nonsuit the plaintiff upon the ground that the evidence failed to show any negligence on its part, and upon the ground that it did show contributory negligence on the part of the deceased.
The only negligence on the part of the defendant submitted to the jury was its omission to ring the engine bell at the crossing. While there was a great preponderance of evidence that the bell was rung, we cannot say that there was not some conflict in the evidence upon that question proper for submission to the jury. There was some evidence tending to show that the bell was not rung, and we cannot say as matter of law that the jury was bound to disregard it. *Page 75 
The verdict was set aside and a new trial granted at the General Term, upon the ground that upon the undisputed facts of the case there was contributory negligence on the part of the deceased. To determine whether the decision of the General Term was right, a careful consideration of all the evidence is required. We have given the evidence such consideration and are compelled to differ with the General Term.
It would serve no useful purpose now to specify minutely the evidence which controls our judgment. The deceased lived near the crossing, and was familiarly acquainted with it and with the running of the trains. The railroad track runs north and south, and the highway east and west; and the deceased approached the crossing about the time trains were due both from the north and south. He was in a one-horse wagon approaching the crossing from the east, and the train by which he was killed came from the south. He was driving his horse upon a very slow trot with one hand, and holding a pail of butter in the other hand. The wind at the time was blowing from the north and the train was run at a high rate of speed. At the crossing and on both sides thereof there was a cutting through the earth for the railroad track seven or eight feet deep, and that the highway could cross the track upon the same level, there was a cutting for it east of the railroad of the same depth for some considerable distance. The deceased was seen a moment before he was struck by the engine looking towards the north from which a train was then about due. It is claimed that he ought to have looked also toward the south, and that if he had, he would have escaped harm; and it is also claimed that if he had listened he would have heard the approaching train.
We must assume now that the bell was not rung, and hence that the only warning to the sense of hearing was the noise made by the running of the train. But it cannot be said positively that he would have heard the train if he had listened. The distance to which a train can be heard depends *Page 76 
upon the nature of the track, the state of the atmosphere, the direction of the wind, and the absence or presence of intervening obstacles. He was in the cutting and there were trees, shrubbery and buildings intervening to a greater or less extent. Whether, under such circumstances, by the exercise of ordinary prudence, he did or could have heard, was a question, upon all the facts proved, for the jury.
It is unquestionably true that the deceased was bound to exercise his sight to avoid danger at the crossing. He was not bound to the greatest diligence which he could have exercised in that way: but he was bound to exercise such care as a prudent man approaching such a place would ordinarily exercise for the protection of his life. Did he exercise such care? Or, in other words, was there an entire absence of evidence that he did? The witnesses differ considerably as to the extent of the obstacles between him and the approaching train. There were buildings, trees, shrubbery, the embankment on the south side of the road, and upon that a board fence. To what extent he could have seen this rapidly approaching train if he had looked at various points in the highway, is uncertain. That the obstructions would greatly interfere with his sight is certain. There was no proof that he was heedless. He was apparently aware of the danger. A train was at that time to be expected from the north, and there was also some obstruction interfering with sight in that direction. For a moment before the collision he was looking in that direction. We cannot say that at that particular time he should have looked toward the south. Under all the circumstances surrounding the accident, we think it was for the jury to determine whether he exercised that care which the law required of him. He could probably have avoided the accident by stopping before he passed upon the track. But that is a degree of care not usual even with very prudent persons. It has not been decided by the courts of this State that a person approaching a railroad is bound as matter of law to stop, to avoid the imputation of negligence. There may *Page 77 
be cases in which a traveler ought to do so, and if he omits to do so, it would be one of the facts, with all the others, to be submitted to the jury.
There is considerable evidence in this case of measurements and experiments to show how a train approaching this crossing from the south could be seen from various points on this highway. Such evidence is frequently very reliable and satisfactory. But it is not necessarily conclusive. Such experiments are made when the witnesses are calm and their whole minds, free from any distractions, are intent upon the matter in hand. They cannot be made under the precise circumstances which attended the transaction to be investigated. There may be a slight change in the intervening obstacles, and the speed of the approaching train is not there. They do not show conclusively what ought to have been seen by a man having a horse to manage and his attention somewhat distracted by the expectation of a train from the opposite direction.
It seems to have been supposed at the General Term of the Supreme Court that our decision in the case of Salter v. TheUtica and Black River Railroad Co. (75 N.Y., 273) controls this case. But without taking time to point out the differences between that case and this, it is sufficient to say that the facts of no two cases are alike. There are many circumstances here which did not exist in that case. We have laid down in many cases the principles which are to govern in the decision of this class of cases. Those general principles are to be applied to the cases as they arise, and in their application to this case we are constrained to differ from the learned court below.
The proof offered to show that the life of the deceased was insured was properly rejected: (Terry, Adm's. v. Jewett,Rec'r., October 7, 1879, recently decided.*)
Other exceptions to which our attention was called upon the argument do not require particular notice. They point out no error prejudicial to the defendant. *Page 78 
The order of the General Term must be reversed and judgment upon the verdict ordered for the plaintiff, with costs.
All concur.
Ordered accordingly.