AUGUSTA LINDEMAN, as Administratrix, etc., of WILLIAM LINDEMAN, Deceased, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Negligence — when the question of the plaintiff's contributory negligence should be left to the jury — right of one finding the gates at a railroad crossing open, to assume that it is safe to cross.*

Upon the trial of this action, brought by the plaintiff to recover damages for the negligent killing of her husband by the defendant, it appeared that on the night of June eighth, at about nine o'clock, when it was "pretty dark," the deceased, a charcoal peddler, in returning home with a team of horses and his empty wagon, reached a place where the highway crossed the defendant's three tracks on grade. On the west side of the tracks, from which side the deceased approached, were gates consisting of two white poles (worked by a crank on the north side of the highway west of the tracks), which were usually lowered

when trains were coming, making it impossible to cross the tracks. As the deceased crossed the track he was struck by an engine backing slowly southward, without any light and without ringing any bell or blowing a whistle, and was killed. The gates were up.

Evidence was given tending to show that the deceased, just before reaching the track, was standing in his wagon leaning on the forward part and looking up and down to see if there was any train approaching, and other evidence was given tending to show that the defendant's flagman, who was on the easterly side of the tracks south of the highway, hallooed to the deceased, "stay back."

*Held*, that it was error to nonsuit the plaintiff; that, taking all the circumstances into account, especially the open gates, the slowness of the engine's backward motion, the absence of light upon it, the noise which the wagon would naturally make, the question of the negligence of the deceased should have been left to the jury.

APPEAL from a judgment, entered upon an order dismissing the plaintiff's complaint made at the trial at the Albany Circuit.

*John S. Wolfe* and *Eugene Burlingame,* for the appellant.

*Hale & Bulkley,* for the respondent.

LEARNED, P. J.:

This is an action, brought by the administratrix of William Lindeman, deceased, to recover for his death, alleged to have been occasioned by the negligence of the defendant. The plaintiff was nonsuited at the trial on the close of her own evidence, and appeals.

Lindeman was a charcoal peddler and had been in Albany the day of the accident with a load of charcoal. He was returning with a team of horses and his empty charcoal wagon, and about nine o'clock he reached a place where the highway crossed the defendant's three tracks on grade. It was the eighth of June and the night was " pretty dark." As the deceased drove across the track he was struck by an engine of the defendant's, which was backing down southward, without any light upon it and without ringing a bell or blowing a whistle. Across the highway, on the west side of the tracks (from which side the deceased approached), were gates consisting of two white poles which were usually lowered across the highway when trains were coming, and which, when lowered, made it impossible to cross the tracks. After trains have gone by the gates were raised. They were worked by a crank on the north side of

the highway and west of the tracks. At the time of the accident the gates were open. These gates are about six feet from the track nearest them. The first point where a man approaching the tracks could get an unobstructed view of them was about seventy-three feet distant therefrom. One witness testified that the deceased, just before reaching the track, was standing in his wagon leaning on the forward part and looking up and down to see if there was any danger coming. The defendant's flagman, a short time before the accident, had been in the shanty on the south side of the highway and the east side of the track. Soon after that Brown, who was working for a dispatch company, came out of the shanty and stood on the easterly side of the tracks looking south. While standing there he heard the flagman halloo, and turned and saw the engine coming on the west track. It was then a short distance from the crank, which is on the northerly side of the highway where the arm of the gate is let down. The engine must have been at that time near to the highway. Brown then saw the team coming and hallooed "stay back." The distance from Brown to the place of the gate was about fifty feet. The flagman was on the easterly track. The engine struck the forward part of the wagon and did not hurt the horses. They must have crossed the track, coming on a little trot.

There was evidence of negligence on the part of defendant. Absence of light, and no sound of bell or whistle, with open gates, were facts for a jury to consider. As to deceased, the question of negligence is this: Did he do what a prudent man would not, or omit what a prudent man would, have done? (*Kellogg* v. *N. Y. C. and H. R. R. R.*, 79 N. Y., 72; *Stackus* v. *N. Y. C. and H. R. R. R.*, Id., 468.) As to the hallooing of the flagman and of Brown, it must be a question for the jury whether that was heard over the noise which a charcoal wagon would make in the ears of one riding therein. The defendant insists that he could have seen the engine if he had looked, and was, therefore, negligent as a matter of law. But he had passed this place before and, therefore, knew of the gates. He saw they were not across the road, and as they were white he undoubtedly saw them standing upright on each side. As said in *Glushing* v. *Sharp* (96 N. Y., 676), this was an assurance of safety, just as significant as if a gateman had beckoned to him or invited him to come on.

Now, suppose one approached a crossing and a gateman beckoned to him to come on, and suppose he saw an engine slowly backing towards the crossing, a prudent man might infer that the gateman knew that the engine was to stop before it reached the crossing and that there was no danger. It may often be the case that engines are moving near a crossing and towards it which they are not to cross. The gateman knowing this signals the traveler to cross. May he not then cross with prudence although he sees the engine? This engine was not drawing a train. It was a single engine, without cars, backing about five miles an hour. That it was not about to go across the track was notified to the public by the fact that the gates were open. (*Directors of N. E. Ry. Co.* v. *Wanless,* L. R., 7 Eng. and Irish App., 12; affirming *Wanless* v. *N. E. Ry. Co.*, 6 Q. B., 481.) The opening of the gates is an affirmative act, giving every traveler to know that the crossing is safe; and though he should see an engine backing at about the rate of a rapid walk, he might think it would stop before it reached the place where the company had, by their signal, said the engine was not to go. How far the witness, Creed, was to be credited was a question for the jury.

Taking all the circumstances into account, especially the open gates, the slowness of the engine's backward motion, the absence of light on it, the noise which the wagon would naturally make, we think that the question of the negligence of the deceased should have gone to the jury. They are the proper judges whether he acted as a prudent man would have done.

Judgment reversed, new trial granted, costs to abide event.

BOOKES and LANDON, JJ., concurred.

So ordered.