### KOOSOROWSKA *v.* GLASSER.

*(Superior Court of Buffalo, General Term.* November 19, 1889.)

1. MASTER AND SERVANT—DANGEROUS PREMISES—KNOWLEDGE OF SERVANT.

In an action for the negligent killing of plaintiff's intestate, it appeared that defendant had a contract for the construction of a tile sewer, and that in order to do the work properly it became necessary to excavate a trench 2½ to 3 feet wide, and from 11 to 12 feet deep. The workmen doing the excavating had orders to throw the dirt well back; and, in addition, others were employed at the top to keep the dirt back from the edge of the trench. While at work in the bottom of the trench, laying tile, plaintiff's intestate was killed by the caving in of the trench, which was caused by the fact that in this instance the excavated dirt was allowed to rest too near the edge. *Held* that, as plaintiff's intestate could not see the extent

to which the soil had accumulated, his means of knowledge of the dangerous character of the work were not equal to those of defendant, who personally superintended the work, and who had been at the place just before the accident happened.

**2. SAME—FELLOW-SERVANTS.**

The fact that the fellow-servants of plaintiff's intestate neglected to obey defendant's order to remove the dirt does not exonerate defendant, as he is chargeable with negligence in not seeing that the order was obeyed.

**3. SAME—CONTRIBUTORY NEGLIGENCE.**

Where defendant furnished braces for the sides of the trench, but objected to their use in this instance, stating that he would watch and give the alarm if the trench started to cave in, the failure of plaintiff's intestate to use them is not conclusive evidence of contributory negligence.

**4. DEATH BY WRONGFUL ACT—DAMAGES—EVIDENCE.**

In an action for the negligent killing of plaintiff's intestate, it is not reversible error for the trial judge to permit plaintiff to show that her intestate left no property. HATCH, J., dissenting.

**5. SAME—RECKLESSNESS OF DEFENDANT.**

Neither is it reversible error to admit in evidence a conversation had with defendant relative to the caving in of the trench at another point, some time before the accident, during which conversation defendant had said that if anybody had been killed the only loss would have been the cost of the man's funeral. HATCH, J., dissenting.

Appeal from trial term.

Action by A. Anastasia Koosorowska, administratrix, etc., against Peter Glasser, for the alleged negligent killing of her intestate. Plaintiff had a verdict, and from an order denying his motion for a new trial on the minutes defendant appeals.

Argued before BECKWITH, C. J., and HATCH, J.

*Tracy C. Becker,* for appellant.    *F. R. March,* for appellee.

BECKWITH, C. J., held that the order should be affirmed, and that the motion for a new trial should be denied, but he filed no opinion.

HATCH, J., (*dissenting.*) The action is to recover damages for negligently causing the death of plaintiff's intestate. The facts upon which plaintiff received a verdict upon the trial, so far as necessary for the disposition of the appeal in this case, are substantially these: Defendant was a contractor, engaged in constructing a 12-inch tile sewer, through Dodge street, in Buffalo, between Masten and Jefferson streets. In the course of such construction, and in order to properly lay the tile, it became necessary to excavate a trench from two and one-half to three feet wide, varying in depth from eleven to twelve and one-half feet, in the bottom of which the tile were laid. The method adopted in the construction was that men with pick and shovel excavated the dirt, which was thrown to one side of the trench, the directions given by the defendant being to throw the dirt back from the edge of the trench; and in addition other men were employed at the top to keep the dirt therefrom sufficiently far to permit of a person's walking along the edge thereof, and also for the purpose of relieving the sides of the trench, to some extent, of the weight of the excavated dirt. As fast as the trench was dug, tile were laid, and, in the ordinary performance of the work, the man laying the tile would be from six to eight feet in the rear of the excavators. Plaintiff's intestate, when first employed upon the sewer, was engaged in excavating from the trench, and also in shoveling the dirt back at the top. Subsequently he was directed by defendant to lay the tile. At various points along the sewer defendant was required to construct man-holes five feet long, and four feet wide at the bottom, with a circular closure at the top, twenty inches in circumference. It thus required at the man-holes the excavation of more earth. The character of the soil through which the trench passed varied. In some places a clay soil was found, and in two places quick-sand. At these last points braces were put in to support the sides of the trench, and the evidence tended to show that deceased was present, saw the braces put in, and knew how they

were used. There were at all times furnished by defendant lumber and materials for braces, and implements to put them in the trench with, which were easily accessible. Plaintiff's evidence tended quite strongly to show, however, that defendant was requested by the men at different times to put in braces, but that he refused, and objected to its being done, stating that he would watch, and give the alarm if it started to cave in. At the time defendant directed deceased to commence laying the tile deceased stated to defendant that it was dangerous there, and defendant stated that he was going to watch at that place. Thereupon deceased commenced laying the tile, and continued for some time after, until, coming in close proximity to the excavation for a man-hole, the side of the trench on which the dirt was piled suddenly gave way, fell upon deceased, and killed him.

The evidence does not clearly show how far this was from the place where deceased was directed to commence to lay the tile, nor do I deem it important, in the view I take of the case. It does appear, substantially without dispute, that the trench here was about twelve feet deep; that the soil was composed mostly of moulding sand, with hard pan at the bottom; that the excavation of the trench and the man-hole had accumulated upon the side more than the usual quantity of dirt; and that it had not been shoveled back, nor had the men in the trench thrown it back as far as they had been directed. Defendant was actively engaged at all times in the superintendence of the work, and just previous to the accident he was at this place, had handed down to deceased tile, and had got but a few feet away when the side caved in. It is to the accumulation of excavated dirt, claimed by both parties, that the caving in was due. I concur in this view, and think the jury were authorized, upon the evidence, to find that the injury was produced by the improper placing of the dirt so close to the trench. Based upon this evidence, widely divergent conclusions are reached by the respective counsel, on the one hand to sustain, and the other to defeat, a recovery.

The first claim made by defendant is that deceased had equal means of knowledge with defendant that it was dangerous to work in the trench without its being braced, and in consequence deceased assumed the risk of its falling in, as one of the risks incident to his employment. So far as the character of the soil was concerned, and its liability to cave in, it is quite apparent that deceased had equal means of knowledge with defendant, so no liability can be predicated thereon; and, within the scope to which the danger was apparent, deceased must be held to have assumed the risks and perils of his employment. *Gibson* v. *Railway Co.,* 63 N. Y. 452. It is, however, quite as well settled that the defendant was bound to provide a safe and secure place for deceased to work, with respect to those conditions, where defendant's knowledge and opportunities for observation were superior. *Pantzar* v. *Mining Co.,* 99 N. Y. 368, 2 N. E. Rep. 24. The measure of defendant's obligation in this regard, as expressed in *Leonard* v. *Collins,* 70 N. Y. 90, is, did the master do everything "which, in the exercise of reasonable and ordinary care and prudence, he ought to have done?" Did he omit "any precaution which a prudent and careful man would or ought to have taken?"

In the application of this rule to the facts in this case, we find the claim made by both parties, and the evidence warrants it, that the proximate cause of the accident was the dirt, excavated from the man-hole and the trench, being allowed to rest too close to the edge of the trench, thus forcing it in. At this point the trench was nearly or quite 12 feet deep; and it is quite clear that deceased, on account of the depth and narrowness of the trench, could not see the extent to which the soil had accumulated. His vision must certainly have been limited, and his opportunities for thus informing himself of the condition were much inferior to those of the defendant, who was there, and must have known of the condition during the accumulation, and immediately prior to the accident, as he states he had just turned away. He had given directions to

have the dirt moved back from the trench, both to the excavators and shovelers upon the top. But his duty did not stop here. He was bound to see that it was done. This duty he owed to the deceased. He was aware of the character of the soil, the danger to be apprehended, and the extent of the accumulation. Under the rule already expressed, and the circumstances as disclosed by the testimony. I think it a fair question for the jury to say whether defendant discharged in this regard the obligation he was under to deceased.

Defendant seeks to avoid the force of this position by saying that such condition was produced by a failure of deceased's co-servants to obey the directions given by defendant with respect to throwing the dirt back, and thus the condition was produced by the negligence of co-employes, for which defendant is not liable. As already observed, the failure to perform a duty by the co-servants in no respect lessened defendant's obligation. As he was present, it was his duty to see that his directions were obeyed. Had this been done, no accident would have happened. He was therefore clearly chargeable with negligence in not compelling it to be done. If, therefore, we give full force to defendant's contention, he is not aided; for when the negligence of a co-servant and the master concur, the master is liable. *Stringham* v. *Stewart*, 100 N. Y. 516, 3 N. E. Rep. 575.

It is also claimed by defendant that deceased was guilty of negligence in not using the braces furnished to support the side of the trench. As already seen, plaintiff's evidence tended to show, and the jury were authorized to find, that defendant prevented the use of the braces; so that question is not important, as there can be no distinction between a case where no appliances are furnished, and where their use is prevented by the master. Deceased could not, for a failure, then, to use, be held negligent, unless the danger was so apparent that he may be said to have continued in the employment and assumed the risk, and that the accident was solely due to a failure to observe such precaution.

While I reach the conclusion that the evidence warrants the verdict, yet I think the judgment should be reversed for errors committed upon the trial. The court was asked to charge the jury "that, if they should find that there were braces and other tools for using there near at hand at the time and place of the accident, and the deceased knew how to use them, and there was nothing to prevent his using them, and he could have seen by exercising reasonable care and prudence that it was necessary to use them, and he did not do so, and thereby the accident occurred, the plaintiff cannot recover." The court, in reply, stated: "I don't think it can be divided. 1 think I will not charge it, under the circumstances in this case, in a different form than I have already." The defendant was entitled to have the jury charged as requested. An examination of the charge fails to show that the court called to the jury's attention the matter specified in the request. The only reference in the charge upon this subject relates to a statement of the claim that defendant deemed the walls of the trench sufficiently solid to hold the dirt thrown out, and that it needed no plank to protect it, in the exercise of reasonable and ordinary care. This falls far short of charging the request. Defendant gave evidence tending to show that he had furnished braces and lumber, together with tools to put them in, for the express purpose of supporting the walls of the trench; that they were at all times easily accessible for that purpose; that the men exercised their own judgment as to the necessity for their use, and deceased had, previous to the accident, used them; that nothing prevented his using them; that, if the wall had been properly braced at the place of the accident, it would have prevented the sides caving in. So that there was upon the request, as a whole, and in each separate part, evidence which would have warranted the jury in finding that the braces were furnished; that nothing prevented their use; that deceased knew how to use them; that, in the exercise of reasonable and ordinary care, he was bound to use them; and for a failure so to do the

accident occurred.    If the jury so found them, defendant became entitled to a verdict.    The refusal to so instruct substantially took from the jury a consideration of an important part of defendant's defense.

Plaintiff was asked upon the trial if deceased left any property.    Objection was made; overruled.    An exception was taken, and plaintiff answered, "No, sir."    In *Kellogg* v. *Railroad Co.*, 79 N. Y. 77, it was held that proof offered for the purpose of showing that the life of deceased was insured was properly rejected.    In *Althorf* v. *Wolfe*, 22 N. Y. 356, the court was requested and refused to charge the jury that, in assessing damages, they should take into consideration the money received by the widow on a policy of life insurance.    It was held properly refused.    In *Briggs* v. *Railroad Co.*, 72 N. Y. 32, it was held error to deduct from a recovery for negligence in burning a building the sum for which it was insured.    In *Terry* v. *Jewett*, 78 N. Y. 346, a refusal to charge that, in estimating damages, the jury might take into consideration that plaintiff would be entitled to the property of deceased of which she was owner at the time of her death, was upheld; the court saying: "Such considerations could not properly affect the question of damages in an action like the present."    That case, like this, was an action for damages for negligently causing death.    These authorities are applicable here.    If it is error to permit the question of benefits which accrue from the presence of property, as the result of the death, to be considered in mitigation of damages, so likewise it is error to permit an absence of property to be shown for the purpose of increasing them.    Such considerations the jury have no business with, and, when permitted to be given, it is not possible to say that the jury are not influenced by it, and, in so far as they are, they are improperly so.    The reception of this evidence was therefore error.

Plaintiff called a witness to testify to a conversation had with defendant at a time when the sewer caved in, where there was quicksand.    Defendant objected to the testimony, upon the ground that it was long prior to the accident, and had no bearing on the subject of the action.    The court allowed the testimony.    An exception was taken, and witness answered: "I said to Mr. Glasser that it was lucky nobody got ketched in that sewer at that time, where it caved in.  *  *  *  Mr. Glasser answered: 'There is no more loss than only the cost of the funeral to bury a man.'"    Motion was then made to strike out the testimony, for the reason that it had no bearing upon the subject-matter of defendant's negligence, and it was not shown to have been brought to the knowledge of deceased.    The motion was denied, and defendant excepted.    It appeared from the evidence that this conversation was had some considerable period of time prior to the accident, and during the construction of the sewer at a point several hundred feet distant therefrom.    It is not perceived how this declaration bore in the slightest degree upon the question of defendant's negligence.    It was not addressed to deceased, nor is it shown that he had any knowledge of it, or that his action or failure to act could in the least particular have been influenced by it.    It cannot, therefore, be said that it has any bearing upon the facts which determine the rights of the parties hereto.    It is, however, quite easily seen that such testimony would very likely influence a jury, and excite their prejudice.    If credited, it led the jury to believe that defendant was possessed of an utter disregard of human life; that he had no care for the safety of his employes; that their lives were only of consequence to him to the extent of the cost necessary for their burial.    The statement is sufficient to show the testimony incompetent and dangerous to the rights of defendant.    It should therefore have been excluded.    Other questions are raised which it is not necessary now to discuss.    It follows that the judgment should be reversed, and a new trial ordered, costs to abide the event.