(143 App. Div. 191.)

## ZUCKER v. WHITRIDGE.

(Supreme Court, Appellate Division, First Department. March 10, 1911.)

1. STREET RAILROADS (§ 117*)—INJURIES—QUESTION FOR JURY.

In an action for the death of one run over by a street car, the question of deceased's contributory negligence *held* one for the jury.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 248–250; Dec. Dig. § 117.*]

2. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR.

In an action for the death of one run over by a street car, a witness testified that he saw deceased walking on the crosswalk before he was struck by the car, and that he was walking the same as witness was, and that witness walked with his head up and looked at everything when he was about to cross a car track, to which testimony no objection was made. *Held*, that there was no reversible error in admitting evidence to show that decedent was in the habit of exercising care in crossing tracks.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

3. DEATH (§ 99*)—DAMAGES.

In an action for death, it appeared that decedent was 46 years of age and in perfect health save shortsightedness and a slight deafness in damp weather, that he left a widow and two children aged, respectively, 3½ years and 21 months, that he earned from $75 to $100 a week, from which he gave his wife $72 to $75, and that he was an excellent musician who had earned the reputation of an artist. *Held*, that a verdict of $30,000 was not excessive.

[Ed. Note.—For other cases, see. Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

Laughlin and McLaughlin, JJ., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by Louise Zucker, as administratrix of the estate of Samuel Zucker, deceased, against Frederick W. Whitridge, as receiver. Appeal by defendant from a judgment in favor of plaintiff, and from an order denying a motion for a new trial. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Frederick J. Moses, for appellant.
Julius H. Cohen, for respondent.

DOWLING, J. Samuel Zucker, for whose death through the negligence of the defendant this action is brought to recover damages, was a musician belonging to a quartette, which played three times daily in a restaurant on Fourteenth street, in the city of New York, and which was also employed at various times in department stores and at fashionable receptions. He had earned a reputation as a member of this quartette, and was regarded as an artist of more than usual ability. He earned $75 per week from his engagements, and in addition was paid amounts varying from $25 to $30 per week from his other engagements, and from giving lessons, he being proficient both as a pianist and a violinist. He was about 46 years of age, in good health, with no physical infirmities save that he was nearsighted, and, although his ear for music was well trained, his hearing in other respects was slightly defective in wet or damp weather. He was married, had two children, and resided with them at 320 Second avenue, between Eighteenth and Nineteenth streets in New York City. It was his custom, in order to avoid the crowds on Fourteenth street, to walk through Irving place on his way to and from his home. On the evening of December 18, 1908, at half past 8 o'clock, Zucker left the restaurant wherein he was playing to go to his home. He was walking eastwardly on the northerly side of Eighteenth street, and had reached Third avenue and was on his way across the same, when he was struck by a north-bound car of the defendant's railroad (he being at the time to the west thereof), and was thrown to and upon the ground with great violence, his clothing being twisted on his body, his umbrella which he was carrying, closed, thrown from his hand, his wig torn from his head, and one of his overshoes pulled from his foot. He sustained a fractured skull, as the result of which he died.

On Third avenue at Eighteenth street, there are tracks of the defendant road, the south-bound tracks being on the westerly side of the avenue, and the north-bound tracks on the easterly side. The elevated structure passes over the avenue with stations in Eighteenth street, on both sides of the avenue and with the usual station platforms on both sides. There are stairs leading to the elevated stations on both sides of the avenue. In Eighteenth street are laid tracks of the cross-town road. The pillars of the elevated structure are placed in the avenue and are 16 inches square. Eighteenth street is more than 30 feet wide at this point. On the northerly sidewalk of Eighteenth street, and on the southerly sidewalk as well, are pillars supporting the station structure. They are about midway between

the extension of the house line and the curb line on Third Avenue. On the northwest corner is a gas light, and on the southwest corner an electric light. One of the pillars of the elevated structure is directly south of the crosswalk on the northwest corner and quite near the more westerly south-bound track; and another pillar is just north of the crosswalk on the southwest corner and quite near the same track. The distance from the curb on Third avenue to the most westerly rail of all the tracks is 22 feet 8 inches; the distance between the rails of each track is 4 feet 8½ inches; and the distance between the uptown and downtown tracks is about 5 feet 4 inches, making the distance from the curb line of Third avenue to the westerly rail of the north-bound track 32 feet 8½ inches. The block from Seventeenth to Eighteenth streets on Third avenue from house line to house line measures 184 feet, and from curb to curb 30 feet more, or a total of 214 feet. The distance from the house line of Third avenue to the curb line is 20 feet. The evening upon which this accident occurred was a disagreeable one; the air being heavy and muggy, and the streets still being wet and slushy from rain which had fallen in the afternoon. There was neither moonlight nor starlight. The happening was witnessed by persons who occupied various positions with respect to the place where Zucker was struck. Herman Zuffel, from a position on the east side of Third avenue, north of Eighteenth street, saw Zucker crossing the avenue, and also saw the Third avenue car approaching at what he terms "a mighty good speed." Zucker was walking on the crosswalk at an ordinary rate of speed "with his head level, straight; that is, just as a man would carry himself ordinarily." He heard no gong rung. The car kept going very fast, and the westerly side of the car struck Zucker, just as he was stepping on the westerly rail of the north-bound track. When this witness assisted in picking him up, he was lying on the south-bound track to the north of the crosswalk, with his feet on the westerly uptown track; the back trucks of the car being near him. This witness was in doubt as to whether the north-bound cars ordinarily stop on the south side of Eighteenth street, testifying both ways upon that question.

Henry Kalckhof was on the southeast corner of Eighteenth street and Third avenue. He observed the car in question coming very rapidly up the avenue, and, thereafter seeing a crowd running, he observed the decedent lying on the uptown track with his feet toward the east, and near the truck of the car. He heard no gong nor warning of any kind. This witness had formerly been a conductor and guard on the elevated railroad and testified that in his opinion the car was going 18 miles an hour as it traveled northward from Seventeenth street, and that it crossed Eighteenth street at about the same rate of speed.

Paul Kurth was in company with the last witness and heard the noise of the car passing him at a very high rate of speed, as he puts it; by which it afterwards appears that he meant it was going more than 15 miles an hour during the time he observed it, which included its passage over Eighteenth street. He heard no gong. When he went to the scene of the accident, he saw Zucker lying across the westerly rail of the north-bound track and the easterly rail of the south-bound

track with his feet on the former rail, not very far away from the rear truck. He observed the fact that a south-bound car had passed the northerly side of Eighteenth street before the north-bound car came along, and they passed each other on the south side of Eighteenth street; the witness' description of it, as shown by his marks upon the survey in evidence, being that, when the northerly end of the north-bound car had reached the northerly line of the southerly crosswalk on Third avenue, the northerly end of the south-bound car was just opposite the southerly end of the north-bound car. It may be stated at this point that it appears from the testimony of all the witnesses that the car did not pass over any part of Zucker's body.

This witness joins in the general description of the night as wet and slushy; although not actually raining, it had done so in the afternoon. He places the point where Zucker's body was lying as 5 or 6 feet north of the north crosswalk.

Paul A. Avery was on the southwest corner of Eighteenth street and Third avenue looking across the avenue, when he saw the car approach close to the man who was hit. He had taken about one step on the track and appeared as if he noticed the car and tried to jump back; but before he had done so the car struck him, whirling and twisting him around. When Avery first looked across the avenue, he saw the car in question going by the south crossing; he then took one or two steps and was near the edge of the sidewalk when he looked again, and as he did so the car shut off his vision and was just approaching the north crosswalk. As this happened the car was a few feet from Zucker, and he then had one foot off the ground, to get back out of the way, when he was struck. He was then directly on the north crosswalk, and at this time the witness thought that the car was from 4 to 8 feet away from the decedent; the car having crossed from the south to the north crosswalk during the length of time that the witness took two steps. For the purpose of ascertaining the speed at which the car was going, the witness went through the actual procedure of taking two steps in the courtroom, and the time so occupied was between $1\frac{1}{5}$ and $1\frac{3}{5}$ seconds. The car having covered a distance of 25 feet between the two crosswalks in this period of time, it would indicate that its speed was about 15 miles an hour.

Zucker was directly on the north crosswalk, and the car did not stop at the south crosswalk. The witness noticed the twisted condition of the decedent's clothing when he was picked up.

Avery, in answer to the question of plaintiff's counsel, testified that from what he observed it was not possible for Zucker to get away from the car before it hit him from the time that he saw it; and, in reply to defendant's counsel, testified that it was not the fact that Zucker stepped on the track when the car was so close to him, coming as it was, that he could not either get across in front of it or back away from it; that when the man put his foot on the track he saw the car, and before he could get out of the way the car struck him, though he is unable to say whether or not he had his foot on the track. He testified later that Zucker was not looking ahead of him, and he did not know where he was looking; that his body was inclined for-

ward in the same position as a man in walking, but he did not notice the position of his head until after he was struck.

Charles W. Sass, a civil engineer, at this time employed as a clerk, was walking on the same side of Eighteenth street as Zucker, in company with one Argento. He was walking easterly some 15 to 20 feet behind Zucker, and at about the same rate of speed, approximately 3 miles an hour. Zucker held his head correctly horizontal in a natural position, as far as the witness observed him. The streets in this locality were covered with a thin ooze, and there was much humidity in the air. This witness was crossing the avenue and was opposite the pillar on the crosswalk, when the car came along and mowed Zucker down. He had first noticed the car in question as he reached a point where, looking south, he could clear with his eye the edge of the dry goods store wall on the southwest corner. It was then midway between Seventeenth and Eighteenth streets. He says the car was running along at the rate of 15 or 17 miles an hour and dashed over the crossing at Eighteenth street without stopping. He saw Zucker struck on the right side of the body and thrown forward, and he picked up his wig, umbrella, and overshoe. Zucker was then lying on his back with his head to the southwest and his feet slightly under the car at the rear of the trucks. This witness identified the car as No. 534 and gave the time of the accident as 8:35 p. m. He heard no gong sounded, and the only noise distinguishable was that of the car as it went over the cross-town tracks, together with the noise of an overhead elevator train, at the same time. He testified that from certain positions the elevator pillars would interfere with a clear vision up and down the avenue. These pillars were about 16 inches square, but after one had passed the pillar there was no further obstruction to the vision uptown or downtown. He confirms the testimony of the other witnesses to the effect that the car had not passed over decedent's body which was lying six feet north of the north crossing.

Frank Argento was the companion of Sass and was walking across the street with him when the accident occurred. He had also seen the car between Seventeenth and Eighteenth streets, but he heard no gong or bell. When the car stopped on the south side of Eighteenth street, he was just stepping into the gutter, on his way across the avenue, as Zucker was hit. He testified further that before he crossed the street, and before the man was hit, he saw him walking on the crosswalk; that he (Zucker) was walking the same as anybody else, about the same as witness was walking; and that he walks with his head up and looks at everything when he is going to cross the cars.

James Downes from a position on the northwest corner of Eighteenth street and Third avenue saw the car strike Zucker, and says it did not stop at the south crossing; that it was going very fast and struck Zucker just as he was about to step on the track, and then went about half a car's length before it was stopped.

It was shown that the decedent's expectancy of life was 23.8 years. Plaintiff's brother-in-law was asked:

"State what you observed as to his manner in crossing railroad tracks while in your company?"

Under objection he answered:

"When we were about to cross railroad tracks, he usually looked to the right and to the left of him and put a restraining hand on my arm before crossing to make sure that there were no vehicles of any kind." ·

He had previously testified that he had had occasion to cross railroad tracks in this city with the decedent. The defendant offered no evidence, but rested upon what it deemed its legal right to have the complaint dismissed upon the ground of failure of proof of any negligence upon the part of defendant and upon the further ground of contributory negligence upon the part of plaintiff's intestate. The reversal of the judgment based upon the verdict of the jury is urged upon the grounds: (1) That the plaintiff's intestate was guilty of contributory negligence; and (2) that error was committed in the admission of the testimony as to decedent's habit of exercising caution in crossing railroad tracks.

Of course, if the evidence conclusively demonstrated that Zucker stepped onto the track in front of a north-bound car when the latter was so near that its stopping before it struck him was physically impossible, and if he so stepped, either having seen the car or having been bound to see it if he looked, a recovery herein would not be possible. But there are many facts to be taken into consideration in determining this question. While Zucker knew the neighborhood well from frequently traveling over this very crosswalk, the conditions on the night in question were unusual. It had rained that day, and the evening was misty and damp; the streets were wet and slushy; there was neither moonlight nor starlight. As Zucker approached the avenue, he would first be able to look down as far as the middle of the block between Seventeenth and Eighteenth streets as he cleared the line of the dry goods store on the southwest corner. Judging from the fact that Sass saw the car in the middle of that block as he reached this point some 15 or 20 feet behind Zucker, when Zucker had previously reached the same point, the car must have been at about Seventeenth street. Then there came the obstructions to his vision due to the presence of the elevated station stairways, the pillars thereof on the southwest and northwest sidewalk, the electric light pillar at the southwest corner, the gaslight pillar, and the elevated structure pillars in the avenue near both crosswalks. Then came the southbound car, necessitating a cessation of travel on the north crosswalk until it passed, causing the shutting out from view of the north-bound car by it before they finally passed each other below the south side of Eighteenth street. Added to these physical conditions were the confusing sounds of the elevated train then passing and the noises caused by the passage of the Third avenue cars over the cross-town tracks in Eighteenth street. The north-bound car gave no warning of its approach by either gong or bell, and while it has been charged by the trial court, and is the law of this case, that decedent had no right to rely upon any custom by which the cars stopped at the south side of Eighteenth street, yet the situation then existing must be taken into consideration when the one car passing the other and temporarily obscuring it from the vision of one on the northwest crosswalk may

well have led him to believe that its speed had been diminished, particularly as it was about to cross a street on which were other tracks. Nor were the jury bound to accept the estimate of Avery that Zucker was about to step on the track when the car was only four to eight feet away, and he is the only witness who undertakes to give the exact distance.

Under the conditions shown to have existed at the time and place of the occurrence, we believe the question of whether or not the decedent was free from contributory negligence was one of fact for the jury, and that it cannot be said as a question of law that he was guilty of contributory negligence. The mere fact that he was struck by the car and not run over, or that he had only reached the west-bound rail when he was struck, is not controlling, for, if that were so, no case could ever be submitted to a jury unless the person injured had passed partly over the tracks before he was injured. The general rule as to the care required in crossing tracks, is thus stated by Earl, J., in Kellogg v. N. Y. C. & H. R. R. R. Co., 79 N. Y. 76:

"It is unquestionably true that the deceased was bound to exercise his sight to avoid danger at the crossing. He was not bound to the greatest diligence which he could have exercised in that way, but he was bound to exercise such care as a prudent man approaching such a place would ordinarily exercise for the protection of his life. Did he exercise such care, or, in other words, was there an entire absence of evidence that he did? * * * Under all the circumstances surrounding the accident, we think it was for the jury to determine whether he exercised that care which the law required of him. He could probably have avoided the accident by stopping before he passed upon the track. But that is a degree of care not usual even with very prudent persons. It has not been decided by the courts of this state that a person approaching a railroad is bound as a matter of law to stop, to avoid the imputation of negligence. There may be cases in which a traveler ought to do so, and, if he omits to do so, it would be one of the facts, with all the others, to be submitted to the jury."

The rule as to crossing the tracks of a railroad in a city has been thus laid down:

"A street surface railway track may not be as much a place of danger as is a stream railway track; but, nevertheless, its presence in the street admonishes a person to be reasonably vigilant when attempting to cross. It behooved the deceased, before going upon it, to use his senses, and look and to listen. He was to decide if it was reasonably prudent at the moment to cross it. The omission to look would only be excusable in a situation when that precaution was shown by the circumstance to have been an unavailing one." Baxter v. Auburn & Syracuse Electric R. R. Co., 190 N. Y. 439, 83 N. E. 469.

While there is, of course, no direct evidence here that Zucker looked in the direction of the approaching car, yet there is evidence of various witnesses as to the manner in which he was walking from which the inference might reasonably be drawn that he did look, and more than once, for approaching cars.

In Shaw v. Jewett, 86 N. Y. 616, it was said:

"The plaintiff is not bound to see; he is bound to make all reasonable efforts to see that a careful and prudent man would make under like circumstances. He is not to provide against any certain result. He is to make an effort for a result that will give safety, such effort as caution, care, and prudence will dictate"—cited with approval in Smith v. N. Y. C. & H. R. R. Co., 177 N. Y. 230, 69 N. E. 427.

The courts have been reasonable in their requirements as to the amount of proof required in cases where the party injured has not survived the accident.

"If he had survived the accident, it would have been necessary for him, in order to meet the burden of proof, to state what he did and what he tried to do fully and explicitly; but, as he is dead, less evidence is required of his personal representative. The plaintiff's intestate was bound to exercise reasonable care; but if, owing to the circumstances, the evidence of care was weak, it does not follow that it was not for the consideration of the jury. If there was any evidence upon the subject, the case should have been submitted to them for decision." Schafer v. Mayor, etc., 154 N. Y. 472, 48 N. E. 751.

"If, in such case, the surrounding facts and circumstances reasonably indicate that the accident might have occurred without negligence in the deceased, that inference becomes possible, in addition to that which involves careless conduct, or a willful disregard of personal safety, and thus, as a question of fact, it would be for the jury to decide between the two possible inferences." Baxter v. Auburn & Syracuse Electric R. R. Co., supra.

In fact, recovery might be had even where there were no eyewitnesses whatever of the accident, where the surrounding circumstances indicated that it might have occurred without the negligence of deceased. Tolman v. Syracuse, B. & N. Y. R. R. Co., 98 N. Y. 203, 50 Am. Rep. 649. In the case at bar, in view of all the circumstances hereinbefore recited concurring to embarrass Zucker, occupy his attention, and influence his course of action, a question was presented for the determination of the jury.

As was said by Werner, J., in Smith v. N. Y. C. & H. R. R. R. Co., 177 N. Y. 228, 69 N. E. 429:

"The so-called crossing cases are proverbially troublesome, for there are comparatively few instances in which the facts and circumstances, considered in connection with the oral testimony, lead so unerringly to a single conclusion as to permit the courts to hold, as matter of law, that contributory negligence has been established. The difficulty in such cases is not with the law, for that is too well settled for discussion, but with the application of the law to a given state of facts. The case at bar is not free from embarrassment in this respect, and that is really the best argument for the plaintiffs that can be made, because it presents the precise case in which the court cannot assume to decide the question of contributory negligence without usurping the functions of the jury. The facts of this case, fairly stated and considered in the light of the inferences most favorable to the plaintiffs, do not so clearly establish the contributory negligence of plaintiff's intestate as to remove the question from the domain of doubt into the realm of undebatable fact. In support of this suggestion, we have but to refer to the persuasive, if not conclusive, circumstance that learned judges have differed as to the effect of the evidence in this record. Without referring in detail to the facts, which are fully set forth in the foregoing statement, it is enough to say that this accident occurred in the nighttime, at a concededly dangerous crossing, under conditions and surroundings to which must be applied the rule of ordinary care in human conduct. This rule is to be measured, not by the great caution of one or the extreme carelessness of another, but according to the standard fixed by the consensus of common sense based upon human experience. Was the plaintiff's intestate reasonably and ordinarily careful of his own safety in the circumstances? It cannot be said that intelligent and reasonable men, applying the rule of ordinary care to the facts of this case, could not fairly differ in their answers to this question, and therefore it is one for the arbitration of a jury and not for the decision of a court."

So, in Parsons v. New York Cen. & Hudson R. R. R. Co., 113 N. Y. 364, 21 N. E. 147 (3 L. R. A. 683, 10 Am. St. Rep. 450):

"The question is whether the injured party, under all the circumstances of the case, exercised that degree of care and caution which prudent persons of ordinary intelligence usually exercise under like circumstances. This rule must, in all cases, except those marked by gross and inexcusable negligence, render the question involved one of fact for the jury."

Under all these decisions, as applied to the facts herein, this case was one which was properly submitted to the jury.

Reversal of the judgment is also urged upon the ground that prejudicial error was committed in receiving evidence as to decedent's habit of exercising care in crossing railroad tracks. Plaintiff had shown the physical infirmities of decedent, who was otherwise a healthy, athletic and vigorous man, in that he was nearsighted and his hearing was affected in damp weather. In the endeavor to reconstruct for the jury the personality of the deceased, and as one element out of those from which they must draw the reasonable inferences as to what decedent actually did at the time of the accident, beyond what the witnesses saw, this proof was offered. The fact that there is but one case in this state where a question was raised which at all approaches this shows that it has always been deemed safer not to offer such proof, or, if offered, not to receive it when objection was made.

The general principle under which such testimony has been received is thus stated in Wigmore on Evidence (volume 1, c. 6, § 92, p. 166):

"Of the probative value of a person's habit or custom, as showing the doing on a specific occasion of the act which is the subject of the habit or custom, there can be no doubt every day's experience and reasoning make it clear enough."

In State v. Railroad, 52 N. H. 528, Sargent, C. J., in harmony with this principal, declared:

"It would seem to be axiomatic that a man is likely to do or not to do a thing, or to do it or not to do it in a particular way, according as he is in the habit of doing or not doing it."

Evidence of one's habit was received in Walker v. Barron, 6 Minn. 508 (Gil. 353), and in Mathias v. O'Neill, 94 Mo. 527, 6 S. W. 253. Prof. Wigmore, after suggesting that the habit or custom sought to be established must have sufficient regularity to make it probable that it would be carried out in every instance or most instances, and after commenting on the necessity of distinguishing between habit and character, says (Wigmore on Evidence, vol. 1, c. 6, § 92, p. 167):

"Subject to the foregoing distinctions, the admissibility of a person's habit, usage, or custom as evidence that he did or did not do the act in question may be said to be universally conceded."

Numerous cases are cited in support of these propositions. The precise question raised herein was presented in the cases of Smith v. Railroad, 70 N. H. 53, 47 Atl. 290, 85 Am. St. Rep. 596 (Dec. 1899), and Tucker v. B. & M. R. R. Co., 73 N. H. 132, 59 Atl. 943 (Jan. 1905). In the former case, proof had been received that the decedent had a uniform habit of slackening the speed of his horse to a walk when ap-

proaching the railroad crossing at which he was subsequently killed, and of looking and listening for the approach of a train before attempting to pass the crossing. This was received as tending to show what he did on this fatal trip, but not as proof that he was a cautious and careful man. In the latter case, similar proof of care on the part of decedent was received. Similar was the decision in Stone v. Railroad, 72 N. H. 206, 55 Atl. 359. These were all death cases, where direct evidence as to what decedent did could not be furnished. To the same effect is Missouri Pacific Ry. Co. v. Moffatt, 60 Kan. 113, 55 Pac. 837, 72 Am. St. Rep. 343.

Of course it is not claimed that such evidence is ever admissible where the person injured survives the accident. It has been received only in death cases, where the jury must decide upon the reasonable probabilities of the case, in the absence of the testimony of the only person who, if alive, could tell them exactly what he did and what he saw before the accident occurred. The case in this jurisdiction most nearly approaching the present is Parsons v. Syracuse, Binghampton & N. Y. R. R. Co., 133 App. Div. 451, 117 N. Y. Supp. 1058, where a judgment for plaintiff was reversed because of error committed in receiving evidence of prior instances whereon decedent had, on passing over the same crossing at which he was killed, exercised care in stopping and looking up and down the track. Plaintiff was permitted to testify to such conduct on the part of decedent on ten or eleven occasions, and another witness testified to similar conduct by decedent for the period of a year. As the court said in conclusion:

"We would hardly feel inclined to reverse this judgment for this error (referring to the receipt of evidence as to the speed of a train by persons not qualified to testify thereto); but, for the error with respect to receiving evidence of the specific prior instances of care on the part of deceased, we think the judgment must be reversed."

In other words, the case was one within one of the exceptions noted by Wigmore to the general acceptance of proof of habit or custom, for the regularity of the action had not been sufficiently established to make it a habit or custom. Whatever may be said as to the probative value of such proof generally, and while the record might have been the better for its absence, we think that in the present case no reversible error was committed by its introduction for the reason that there was already in the record the following evidence of the witness Argento received without objection and hereinbefore quoted:

"Before I crossed the street with Mr. Sass and before the man was hit, I saw him walking on the crosswalk. He was walking the same as anybody else. He was walking about the same as I was walking. I walk with my head up and look at everything when I am going to cross the cars."

Here a standard for comparison had already been received, which involved proof of habit, and no objection was made to its receipt. There is sufficient in this record to sustain this verdict, quite apart from this testimony.

The recovery herein is questioned as excessive, but it does not seem so to us. The decedent was a man 46 years of age, in perfect health, having no physical defects of any kind save his shortsightedness and

a slight deafness in damp weather. His expectancy of life was 23.8 years. He left a widow and two children, a boy and a girl, who at the time of his death were aged, respectively, 3½ years and 21 months. He was a devoted husband and father. He earned from $75 to $100 a week, from which he gave his wife $72.50 to $75 per week. He was a very fine musician, who had earned a reputation as an artist, and who was shown by such witnesses as Victor Herbert and Hugo Sohmer to have gained high standing as a pianist and player of the viola. He was in the prime of his career as an artist, and would not have begun to decline in his ability as such until he had reached 60 years of age at least, in the ordinary course of events. Under these conditions, a verdict of $30,000 cannot be said to be excessive.

The judgment and order appealed from should be affirmed, with costs to respondent.

INGRAHAM, P. J., concurs.

SCOTT, J. (concurring). If Zucker had survived the accident, and was suing in his own behalf and gave no more evidence of his freedom from contributory negligence than is contained in the present record, I should without hesitation concur in a reversal of the judgment. It is well settled, however, as demonstrated by Mr. Justice DOWLING, that less convincing evidence of freedom from contributory negligence on the part of an injured person is required, when his injury has resulted in death and the suit is by his representatives, than would be required if he had survived and could speak for himself. I have therefore concluded to concur in the affirmance of the judgment. As to the evidence that the deceased customarily exercised care in crossing railroad tracks, I much doubt its admissibility; but, even assuming that it was incompetent, I am not persuaded that it tended in any appreciable degree to induce the verdict. At most it only tended to lend a tone of probability to the direct evidence that on the occasion of the accident Zucker apparently observed ordinary care in crossing the street.

McLAUGHLIN, J. (dissenting). The plaintiff could not recover without proving that her intestate was free from negligence, and in this respect I think she failed. I am unable to find in the record any evidence to sustain the finding that the intestate exercised any care whatever before attempting to cross the tracks on which the car which killed him was running. Had he exercised any care, had he looked, he would not have lost his life. The facts immediately connected with and surrounding the accident are disputed. The intestate, at about 8:30 p. m. on December, 18, 1908, attempted to cross Third avenue, when he was struck by one of the defendant's north-bound cars and killed. He was proceeding easterly, and when he reached the westerly curb of Third avenue the car which subsequently struck him was visible, being then about the middle of the block between Seventeenth and Eighteenth streets. It was traveling at the rate of from 15 to 18 miles an hour, and he was walking at the rate of about 3 miles an hour. Whether he looked when he left the curb does not appear; but

if he did so he certainly saw the car. When he reached a point between the rails of the south-bound track, which was several feet from the north-bound track, the front of the north-bound car was at the southerly crosswalk of Eighteenth street and still moving at the same rate of speed. At that time the rear end of this car was opposite the rear end of a south-bound car, according to the testimony of plaintiff's witness Kurth, and the intestate was then walking, according to the plaintiff's witness Zuffel, at an ordinary rate of speed, "his head was level, I mean straight, just as a man would ·carry himself ordinarily." The proximity of the car to the intestate and the manner in which he was walking were such as to indicate to this witness, who was several feet further away from the car than the intestate, that there was going to be a collision "and the man would be hit by the car." He testified:

"I saw both this man and the car before they came together. I saw the car coming and the man coming, and I realized that there was going to be a collision and the man would be hit by the car. * * * This man ʼwas struck by the car just as he was stepping onto the westerly rail, the nearest rail to him, of the track on which the car was running. That is correct. When I reached the conclusion that this collision was going to take ·place and this man was going to be struck by the car, he was on the other track."

The other track referred to was at least five feet four inches from the nearest rail of the track on which the car which subsequently hit him was running. Had he looked when at this point he could not have helped but see the car. It was lighted, and there was nothing to obstruct his vision. He continued in the direction in which he was going and was struck by the car just as he was stepping over the first rail of the north-bound track, or, according to plaintiff's witness Avery:

"When the man put his foot on the track was when he saw the car. Before he could get out of the way the car struck him. He might have had his foot on the track."

The same witness testified it appeared as if the intestate noticed the car and "tried to jump out of the way, but before he could get back out of the way the car had struck him."

The case was submitted to the jury, evidently upon the theory that the evidence would justify a finding that if the intestate had looked he would not have been able to see the car; that his vision was obstructed by the elevated railroad pillars, the south-bound car, and the atmospheric conditions. There was some proof that it was misty; but the uncontradicted evidence of the plaintiff's witnesses, who saw the accident, is that the car was visible at least half a block away at the time when the intestate left the curb, and immediately preceding the time he was struck another witness, as we have already seen, much further away, saw the car, and the intestate and concluded from the manner in which both were proceeding that there was going to be a collision. The south-bound car could not have obscured his view, because it had completely passed the north-bound car when the intestate was on the south-bound track, several feet to the west of the north-bound track. That the elevated railroad pillars could not have obscured his vision while at this point is clearly shown by the exhibits in evidence. The record shows, as it seems to me, that the intestate

stepped directly in front of the car, and, had he exercised any care whatever before doing so, the unfortunate accident would have been avoided. Under such circumstances,, the complaint should have been dismissed. Baxter v. Auburn & S. E. R. R. Co., 190 N. Y. 439, 83 N. E. 469; Bambace v. Interurban St. Ry. Co., 188 N. Y. 288, 80 N. E. 913; Lofsten v. Brooklyn Heights R. R. Co., 184 N. Y. 148, 76 N. E. 1035; Flynn v. Joline, 135 App. Div. 291, 119 N. Y. Supp. 785; McAuliffe v. N. Y. City Ry. Co., 122 App. Div. 633, 107 N. Y. Supp. 522; Marguiles v. Interurban St. Ry. Co., 116 App. Div. 157, 101 N. Y. Supp. 499; West v. Metropolitan St. Ry. Co., 105 App. Div. 373, 94 N. Y. Supp. 250; Knapp v. Metropolitan St. Ry. Co., 103 App. Div. 252, 92 N. Y. Supp. 1071; Greene v. Metropolitan St. Ry. Co. 100 App. Div. 303, 91 N. Y. Supp. 426; Muessman v. Metropolitan St. Ry. Co., 76 App. Div. 1, 78 N. Y. Supp. 571; Madigan v. Third Ave. R. R. Co., 68 App. Div. 125, 74 N. Y. Supp. 143; Weiss v. Metropolitan St. Ry. Co., 33 App. Div. 221, 53 N. Y. Supp. 449, affirmed 165 N. Y. 665, 59 N. E. 1132.

There was some proof to the effect that the defendant's cars were accustomed to stop at the south crossing of Eighteenth street, and it is suggested that the intestate had a right to rely, at the time in question, on their coming to a stop at that point. But, even if that were the custom, it did not justify the intestate in heedlessly walking across the track or stepping directly in front of the car. Thompson v. Metropolitan St. Ry. Co., 89 App. Div. 10, 85 N. Y. Supp. 181. And, in addition to this, the trial court charged that the deceased "as a matter of law did not have the right to rely on the motorman's stopping' on the south crosswalk." Such instruction became the law of the case and was binding upon the jury.

I am also of the opinion that the judgment should be reversed for an error in the admission of evidence. During the course of the trial a witness, after stating that he had frequently been upon the streets with the intestate and had had opportunities to observe his conduct in crossing the same, was asked the following question:

"Q. State what you observed as to his manner of crossing railroad tracks while in your company?"

The question was objected to on different grounds which were overruled, an exception taken, and the witness answered:

"A. When we were about to cross railroad tracks, he usually looked to the right and to the left of him and put a restraining hand on my arm before crossing, to make sure that there were no vehicles of any kind coming."

A motion was then made to strike out the answer as incompetent and not relevant to the issues. The motion was denied and an exception taken. The purpose sought to be accomplished by the introduction of this evidence is obvious. It was to show a habit of carefulness on the part of the intestate, as tending to prove that he was prudent and careful on the occasion when he was killed. But the fact that he had exercised care in crossing streets on certain occasions when observed by the witness did not establish that he was careful at the time in question; in other words, a person who is careful on one occasion may be careless on another. The circumstances may induce prudence

at one time, while at another they may not even suggest it. It is a matter of common experience that even the most prudent man and careful will, at times, be careless. A finding based upon such evidence is purely speculative, and, as suggested in many of the authorities, introduces an issue not tendered by the pleadings. So far as I have been able to discover, there are only two states in which it has been held that such evidence is admissible (Davis v. Railroad Co., 68 N. H. 247, 44 Atl. 388; Missouri Pacific R. R. Co. v. Moffatt, 60 Kan. 113, 55 Pac. 837, 72 Am. St. Rep. 343) while the contrary has been held in many of the states (Connors v. Morton, 160 Mass. 333, 35 N. E. 860; Robinson v. F. & W. R. R. Co., 7 Gray [Mass.] 92; Peoria & P. U. R. Co. v. Clayberg, 107 Ill. 644; Baker v. Irish, 172 Pa. 528, 33 Atl. 558; Dalton v. C., R. I. & P. R. R. Co., 114 Iowa, 257, 86 N. W. 272; Chase v. Maine Central R. R., 77 Me. 62, 52 Am. Rep. 744; Morris v. East Haven, 41 Conn. 252; Propsom v. Leatham, 80 Wis. 608, 50 N. W. 586), and in the federal courts (Louisville & N. R. Co. v. Summers, 125 Fed. 719, 60 C. C. A. 487). There seems to be very little authority in our own state; but, so far as the subject has been referred to, it would seem that such evidence is not admissible. Thus in Eppendorf v. B. C. & N. R. R. Co., 69 N. Y. 195, 25 Am. Rep. 171, action was brought to recover damages for an injury sustained while attempting to get on one of the defendant's moving cars. The defendant offered to show that the plaintiff was in the habit of jumping on its cars when in motion, and it was held that the evidence was properly excluded; the court saying:

"It is impossible to perceive what bearing the evidence offered could have. * * * The sole question to be determined here. so far as relates to plaintiff's alleged contributory negligence, was the character of the plaintiff's acts under the circumstances existing at the time, and what he may have done at some other time, under other circumstances, could have no bearing upon that question."

See, also, Warner v. N. Y. C. & H. R. R. R. Co., 44 N. Y. 472.

And in Wooster v. Broadway & Seventh Ave. R. R. Co., 72 Hun, 197, 25 N. Y. Supp. 378, Mr. Justice Follett, speaking for the General Term, said:

"It has been many times held that it is not competent for a plaintiff to give evidence that the person by whom the alleged negligent act was committed had previously committed similar acts or that he was generally negligent or skillful."

See, also, Senecal v. Thousand Islands Steamboat Co., 79 Hun, 574, 29 N. Y. Supp. 884.

In Parsons v. Syracuse, Binghampton & New York R. R. Co., 133 App. Div. 461, 117 N. Y. Supp. 1058, a quite similar question was considered. There, action was brought to recover damages for the death of plaintiff's intestate who was killed while crossing the railroad tracks of the defendant. There were no eyewitnesses of the accident, and, for the purpose of showing that the intestate exercised care before going upon the tracks, witnesses who had frequently seen him cross the tracks were permitted to state the care which he took before doing so. It was held that the admission of this evidence necessitated a reversal

of the judgment.   Mr. Justice Chester, who delivered the opinion, in which all of the other justices concurred, said:

"The only question presented for determination on this branch of the case is whether evidence of specific instances of care prior to the accident was competent on the question of care at the time of the accident.   A man who is careful on one occasion may be careless at another.   The circumstances at one time may be such as to induce prudence, while they might not at another time; but the worst feature of this class of evidence is that it presents issues for trial not tendered by the pleadings and which the opposite party is not prepared to meet.   If this evidence was competent for the plaintiff, it would be just as competent for the defendant to prove that on prior occasions the plaintiff's intestate had been careless; that also on other nights when this engineer ran his engine over this crossing he had run it slowly; that he had his headlight burning;   that he rang his bell and blew his whistle;   and that he had been seen many times on prior occasions to observe all these precautions.   It would also be competent for the plaintiff to dispute such testimony and to show that on prior occasions he had been careless.   Thus, the issues would be largely multiplied, and no party going to trial would know in advance what he would have to meet."

The judgment and order appealed from should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

LAUGHLIN, J. (dissenting).   I am of opinion that the evidence required that the case be submitted to the jury, and that it was sufficient to sustain the verdict for the plaintiff;   but on the question of freedom from contributory negligence on the part of the decedent, which was a very close one on the evidence, I think that it was prejudicial error to receive evidence tending to show that the decedent customarily exercised care in crossing railroad tracks.

I therefore vote for reversal.